Otto VIENNA, Francis Lohof, Tom Kirby, Katherine Chaisson, Carl Godtland, Marvin Mills, James McCleary, Thomas Estabrook, and Don Davis, Individually and as Class Representatives, Appellants,

v.

SCOTT WETZEL SERVICES, INC., Providence Washington Insurance Company, Industrial Indemnity Insurance Company, Aetna Life & Casualty, and Crawford & Company, Appellees.

AETNA CASUALTY & SURETY COMPANY, and Morrison-Knudsen Company, Appellants,

v.

Eugene SULKOSKY, Appellee.

Nos. S–1289, S–1290, S–932.

Supreme Court of Alaska.

July 24, 1987.

Chancy Croft, Anchorage, for appellants in nos. S–1289, S–1290.

Allan E. Tesche, Randall J. Weddle, Faulkner, Banfield, Doogan & Holmes, Anchorage, for Scott Wetzel Services, Inc., Indus. Indemnity Ins. Co., and Aetna Life and Cas., appellees in nos. S–1289, S–1290, and Aetna Cas. & Surety Co. and Morrison-Knudsen Co., appellants in no. S–932.

Patricia L. Zobel, Schaible, Staley, DeLisio & Cook, Inc., Anchorage, for Providence Washington Ins. Co., appellee.

Robert L. Eastaugh, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for Crawford & Co., appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Chief Justice.

In *Alaska Pac. Assurance Co. v. Brown*, 687 P.2d 264 (Alaska 1984), we affirmed the superior court's determination that AS 23.30.175(d) is unconstitutional.[1] The superior court had concluded that the statute unconstitutionally reduced compensation benefits of injured workers who choose to reside outside of Alaska. *Id.* at 268 & n. 3. However, we reversed the superior court's award of damages retroactive to the date of the enactment of AS 23.30.175(d) and held that those workers who were parties to the litigation could be awarded damages prospectively from the effective date of the superior court's decision. *Id.* at 274–76 & n. 19. The principal issue in these consolidated appeals is the extent to which, if any, our decision in *Brown* should be applied retroactively to those injured workers who were non-parties to the *Brown* litigation and who seek damages for compensation underpayments.[2]

We hold that *Brown* retroactively applies to the date of the superior court *Brown* decision to those non-party workers whose claims remain open to adjudication and to those who have preserved the issue for appeal.

## I. PROCEEDINGS.

### A. *Otto Vienna.*

Appellants in *Otto Vienna* are workers who suffered work-related injuries in Alaska and filed claims for workers' compensation benefits, were paid temporary total disability compensation, and resided outside of Alaska for at least some period of time between December 12, 1981 (the date of the superior court's decision in *Brown*), and February 17, 1984 (the date of this court's decision in *Brown*). Appellees are insurers and adjusters who, until the issuance *Brown*, either paid as insurers paid, or recommended payment of as adjusters, compensation benefits at the out-of-state rate subsequent to the superior court's ruling in *Brown* that AS 23.30.175(d) was unconstitutional.

The injured workers, individually and as a class, sought damages for compensation underpayments between December 12, 1981 and February 17, 1984. In the context of a motion for summary judgment, the superior court held that the superior court *Brown* decision was not binding on the insurers and adjusters; that AS 23.30.-175(d) remained validly enacted as to carriers who were not parties to the *Brown* case until this court issued its decision in *Brown;* that this court's opinion in *Brown* precluded any award of damages against the insurers and adjusters for their compliance with AS 23.30.175(d) prior to February 17, 1984; that the insurers and adjusters complied with *Brown* by paying to their out-of-state compensation recipients benefits calculated at the Alaska rate after February 17, 1984; and that *Brown* is to be applied prospectively as to all non-parties to the *Brown* litigation.[3]

### B. *Sulkosky.*

In October 1982, Sulkosky suffered a work related injury in Alaska and received workers' compensation benefits. He appealed the decision of the Alaska Workers' Compensation Board (board) denying his

---

1. As noted in *Brown*, 687 P.2d at 267 n. 1, this provision was amended in 1982 along with the whole of AS 23.30.175. Former section .175(d) was reclassified as section .175(c). *Id.* For the sake of convenience we will use only section .175(d) in this opinion, with the understanding that both old and new versions are included in this reference.

2. Also at issue on appeal in *Otto Vienna* is whether insurance adjusters are liable for compensation underpayments.

3. Additionally, the superior court held that the adjuster's theory in seeking summary judgment was mooted by its grant of summary judgment on the rationale that *Brown* would not be accorded retrospective application to non-parties. The adjusters' subsequent motion to amend the judgment and grant them summary judgment based on their status as adjusters was denied by the superior court.

claim for compensation at the Alaska rate for the period of October 24, 1982 through August 30, 1983. During that period he resided outside of Alaska and was compensated at the lower out-of-state rate. He filed his appeal in the superior court eight days before our decision in *Brown,* and properly raised the compensation issue in his points on appeal to the superior court. Based on its finding that *Brown* should be applied retroactively to December 12, 1981, the superior court reversed the decision of the board, directing it to pay Sulkosky at the Alaska rate for the period in which he resided out-of-state.

## II. PROSPECTIVE OR RETROACTIVE EFFECT?

▇ The superior court in *Brown* declared AS 23.30.175(d) unconstitutional and imposed damages from the effective date of its enactment (September 22, 1976).[4] As indicated at the outset we affirmed the superior court's ruling that, under the equal protection clause of Alaska's constitution, AS 23.30.175(d) was unconstitutional, but we reversed its retroactive award of damages to the date of the enactment of AS 23.30.175(d).[5] In our opinion in *Brown* we stated in part that:

[T]he prospective effect of the superior court's judgment is unaffected ... [by our holding that private entities who regulate their behavior in good faith compliance with a validly enacted law cannot be legally responsible for constitutional defects of the law].... From and after the effective date of the judgment appellant and the other class members are entitled to the payments they would have received except for the unconstitutional provisions of § 175.[6]

In *Commercial Fisheries Entry Comm'n v. Byayuk,* 684 P.2d 114 (Alaska 1984), we addressed the question of wheth-er *State, Commercial Fisheries Entry Comm'n v. Templeton,* 598 P.2d 77 (Alaska 1979), should be applied prospectively or retroactively. In *Byayuk* we noted that *Templeton* itself "did not specifically deal with this issue beyond applying the rule to the litigants in that case."[7] Similarly, in *Brown* we did not specifically treat the retroactivity issue beyond holding that partial retroactivity applied to the parties.[8]

There is no rule concerning retroactivity articulated in Alaska's constitution.[9] Each case must be decided on its unique facts.[10] "Concerning civil cases, this court has held that retroactivity is the rule and prospectivity is the exception."[11] In this regard in *Plumley v. Hale,* 594 P.2d 497, 502 (Alaska 1979) (footnote omitted), we said:

Absent special circumstances, a new decision of this court will be given effect in the case immediately before the court, and will be binding in all subsequent cases in which the point in question is properly raised, regardless of the fact that the events to which the law is applied occurred prior to the actual decision of the Court. In a number of our cases however, we have recognized that on occasion, the interests of justice may demand that a new rule of law only be applied prospectively.

In order to provide an analytical framework for future cases we announced, in *Byayuk,* four criteria for determining retroactivity:

1) whether the holding either overrules prior law or decides an issue of first impression whose resolution was not foreshadowed; 2) whether the purpose and intended effect of the new rule of law is best accomplished by a retroactive or a prospective application; 3) the extent of reasonable reliance upon the old rule of law; and 4) the effect on the

4. *Brown,* 687 P.2d at 269; *see* ch. 252, § 5, SLA 1976.

5. *Brown,* 687 P.2d at 274–76.

6. *Id.* at 276 n. 19.

7. *Byayuk,* 684 P.2d at 117.

8. *See Brown,* 687 P.2d at 275–76 & n. 19.

9. *Byayuk,* 684 P.2d at 117.

10. *Id.*

11. *Id.* (citing *Plumley v. Hale,* 594 P.2d 497, 502 (Alaska 1979)).

administration of justice of a retroactive application of the new rule of law.[12]

Application of the criteria to the record in the instant case persuades us that no reasons have been shown which require deviation from the normal rule of retroactivity.

The first *Byayuk* criterion establishes a threshold test to determine whether a purely prospective application of a new rule of law is at issue.[13] In *Warwick v. State ex rel. Chance,* 548 P.2d 384, 394–95 (Alaska 1976), we went beyond this threshold criterion to consider the remaining criteria for determining retroactivity, where this court had not previously been called upon to interpret the provision in question and the construction of the provision was "subject to rational disagreement." In our view this threshold test has been met in the case at bar, since this court had not addressed the question of the constitutionality of AS 23.30.175(d) prior to our decision in *Brown* and it can be said that the issue was one "subject to rational disagreement."[14] Thus the threshold *Byayuk* test has been met. Once the threshold test has been satisfied, then the purpose and intended effect of the *Brown* decision must be analyzed. As we observed in *Byayuk,* "[t]his is the single most important criterion to use in determining whether to apply a new rule of law retroactively or prospectively."[15]

The workers argue that the purpose and intended effect of the *Brown* decision was the invalidation of the impermissible distinction between Alaska residents and non-residents as well as the elimination of a penalty against the right to travel among the states. They contend that the intended

purpose and effect of *Brown* are better effectuated by retroactive application.

The primary purpose of *Brown* was to overcome the penalty imposed on those injured workers who traveled out of Alaska and thus faced reduced workers' compensation benefits.[16] *Brown* was intended to compensate those penalized workers, by awarding them the difference between the Alaska rate of workers' compensation and the out-of-state rate which had been previously denied to them.[17] Of additional significance is the fact that in *Brown* we sought to balance the compensatory interest of the *Brown* class members with the reliance interest of Alaska Pacific Assurance Company (ALPAC) by giving the decision retroactive effect to the date of the superior court's decision.[18]

Here the same interests are involved. Both ALPAC and non-party insurers were aware of the possibility of this court's affirming the superior court *Brown* decision holding AS 23.30.175(d) unconstitutional. After the superior court's decision in *Brown* the non-party insurers' reliance on the continuing validity of AS 23.30.175(d) paralleled that of ALPAC's reliance. Moreover, the same inequity results to both *Brown* class members and other non-party workers who were denied the in-state rate of compensation. Therefore, in order to effectuate the intent and purpose of *Brown* we conclude that the same balance should be struck in the present case for both non-party workers and non-party insurers.

The third criterion to be applied under the *Byayuk* test is the extent of reasonable reliance by the non-party insurers upon AS 23.30.175(d).[19] Although we think it debat-

---

**12.** *Id.*

**13.** *Id.*

**14.** While the superior court in *Brown* found section 175(d) unconstitutional, another superior court upheld section 175(d), *McCracken v. State,* No. 77–8481 Civ. (Alaska Super., 3rd Dist., Anchorage, June 14, 1979), against a challenge under the privileges and immunities clause; moreover, the State of Alaska Division of Insurance, the agency charged with regulating insurance rates for workers' compensation coverage, did not consider the superior court decision in

*Brown* to constitute a change in law allowing an increase in workers' compensation insurance rates.

**15.** *Byayuk,* 684 P.2d at 118.

**16.** *See Brown,* 687 P.2d at 273–74.

**17.** *See id.* at 275–76 & n. 19.

**18.** *See id.* at 276 n. 19.

**19.** As to this criterion we said that in *Byayuk* that:

able whether it can be said that the non-party insurers reasonably relied on the constitutionality of AS 23.30.175(d) after the superior court's decision in *Brown,* we are of the further view that the weight to be given to any such reasonable reliance is of "minimal importance where the purpose and intended effect of the new rule of law clearly justifies retroactive application." [20] Thus, given our view as to the intended effect and purpose of *Brown* we think that retroactive application of *Brown* to non-party workers in the instant case is appropriate. As was noted by Justice Matthews in his dissenting opinion in *Suh v. Pingo,* 736 P.2d 342 at 348 (Alaska, 1987):

> An insurer's reliance interest is insufficient to compel prospective application of a change in the law unless the insurer presents a compelling case of grave financial consequences.[21] No such showing has been presented in this case.

The last *Byayuk* criterion remaining to be examined in the context of this case is the effect on the administration of justice of a retroactive application of *Brown* to non-party insurers. As was noted in *Byayuk,* "[t]his factor is useful in determining not only whether a new rule should apply retroactively but also how far the application should extend." [22]

In large measure application and analysis of this last *Byayuk* criterion to this case is controlled by our discussion of the third *Byayuk* criterion—the extent of reasonable reliance by non-party insurers. In short, we conclude that any negative impact retroactive application of *Brown* would have on the administration of justice is outweighed by the "fundamental inequity" which would result if injured workers were

**20.** *Byayuk,* 684 P.2d at 119.

> The next criterion is closely related to the threshold test in substance although not in purpose. In this instance the extent of reliance on an old rule of law is used to further weigh the merits of a prospective versus a retrospective application and also to set the limits of retroactivity. In other words, rather than setting forth a determinative test, as the threshold criterion does, *this criterion is used as a balancing factor.*
>
> ....
>
> We note that this criterion is generally designed to protect persons who innocently rely on judicial or legislative law rather than agencies which rely upon their own regulation.... [T]his factor is of minimal importance where the purpose and intended effect of the new rule of law clearly justifies a retroactive application.

684 P.2d at 119 (emphasis added).

**21.** The following footnote accompanied this portion of Justice Matthews' dissent.

> 2. *Compare EEOC v. Texas Industries,* 782 F.2d 547, 552 (5th Cir.1986) (finding no substantial inequity where fiscal soundness of health insurance plan would not be jeopardized by retroactive relief where the overruling law "should have been seen as, at the least, a significantly realistic possibility"), *with Los Angeles Dep't of Water & Power v. Manhart,* 435 U.S. 702, 719–22, 98 S.Ct. 1370, 1380–82, 55 L.Ed.2d 657, 672–74 (1978) (noting possible devastating effect of retroactive relief on fifty million Americans), *and Arizona Governing Comm. v. Norris,* 463 U.S. 1073, 1105–07, 103 S.Ct. 3492, 3510–11, 77 L.Ed.2d 1236, 1262–63 (1983) (noting devastating re-

sults of holding employers liable retroactively).

Professor Keeton's persuasive rationale for retrospective overruling in civil cases was also alluded to by Justice Matthews in his dissent. *Suh,* 736 P.2d 342 at 348–349, Professor Keeton writes:

> It is sometimes suggested that retrospective overruling in tort cases is unfair not only to the uninsured institutions but also to the liability insurers whose rates have been set in reliance on precedent and to the group of policyholders who will pay higher than the compensatory premiums in order to make up for the losses the insurers suffered by collecting inadequate premiums over the period to which the overruled decision retrospectively applies. But the implications of this view make it wholly unacceptable. First, its general acceptance would in effect disable courts from creative decisions in accident law. Second, *the need for protection of the reliance interest is much less significant in this context than in the context of uninsured institutions, since the risk of disastrous impact upon a particular insurer is so much less serious. Some guarantee of this appraisal appears in the fact that ordinarily it is impossible to trace the impact of particular legal doctrines upon liability insurance rates.*

Keeton, *Creative Continuity in the Law of Torts,* 75 Harv.L.Rev. 463, 492–93 (1962) (emphasis added, footnote omitted).

**22.** *Byayuk,* 684 P.2d at 119 (citing *State v. Glass,* 596 P.2d 10, 14 (Alaska 1979)). We further noted that "[a] change in the law or the formation of a new rule will invariably lead to some inequitable results." *Id.*

to be permanently deprived of full compensation.[23]

Given the foregoing we conclude that our decision in *Brown* should be accorded retroactive application to non-party workers and insurers in the instant case to the date of the superior court *Brown* decision. Our holding is limited to those workers whose claims remain open to adjudication and to those who have preserved the issue for appeal.[24]

## III. ARE THE ADJUSTERS LIABLE FOR INSUFFICIENT PAYMENT OF COMPENSATION IF *BROWN* IS ACCORDED RETROACTIVE APPLICATION?

█ The adjusters separately argue that they should not be liable for the reduction of benefits or the relief sought by the workers because as adjusters they are distinct from insurers under state law. They further argue that under principles of agency they are not liable for contracts made with employers for undisclosed or partially disclosed principals, i.e., the insurance carriers, because they never entered into a contract or made a contract on behalf of an insurer. Moreover, they argue that because employers must by law provide the name of the insurer, there is no undisclosed principal, the undisclosed agency doctrine does not apply, and therefore the insurer is liable for the payment of claims.

In *State v. Appleton & Cox,* 703 P.2d 413, 414 (Alaska 1985), we said:

"When the agent of the insurer acts in an authorized nontortious manner he is not personally liable to the insured for his acts or for any contracts which he makes on behalf of his disclosed principal." 4 G. Couch, Cyclopedia of Insurance Law 2d § 26A:288, at 552 (Rev. ed. 1984) (footnote omitted). *Accord* Restatement (Second) of Agency § 320 (1958); *but cf. id.* §§ 321, 322 (agent liable if principal undisclosed).

In *Appleton* the state was furnished with a statement that the state would be covered, and which mistakenly identified the insurer as Appleton & Cox/Lloyds, London. *Id.* at 413. Appleton & Cox was a surplus lines insurance broker. *Id.* The state contended that Appleton & Cox was liable as an agent of an undisclosed principal. *Id.* at 414. We held Appleton & Cox not liable, stating: "Assuming the existence of an agency relationship, we nevertheless conclude the principals' [sic] identity is disclosed in the policy and the certificate of insurance, therefore Appleton & Cox is not personally liable." *Id.*

---

**23.** *Compare* Justice Matthews' dissent in *Suh,* 736 P.2d 342 at 349, where he writes in part:

Moreover, any unfairness to the insurer, which is compelled to pay benefits that were not foreseen in the insurance rate structure, is at least equally balanced by the unfairness which each claimant is forced to suffer when he does not receive the benefits which the law, properly construed, affords him, and which the legislature intended to provide. Every dollar saved by an insurance carrier under an improper construction of the law is a dollar taken from the legal entitlement of a claimant. We have previously said that the Workers' Compensation Act should be liberally construed in favor of claimants. *Hood v. State,* 574 P.2d 811, 813 (Alaska 1978). When the equities are evenly divided this rule of construction requires a decision in favor of the claimants.

**24.** *Compare Griffith v. Kentucky,* 479 U.S. ——, ——, 107 S.Ct. 708, 716, 93 L.Ed.2d 649, 661 (1987) (holding "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."); *Farleigh v. Municipality of Anchorage,* 728 P.2d 637, 640–41 (Alaska 1986) ("where a new rule serves to ensure defendants a fair trial, it must be retroactively applied at least to any case which was not finally disposed of at the time the rule was announced, provided that the defendant raised the point in the trial court.").

In *Kaatz v. State,* 540 P.2d 1037, 1050 (Alaska 1975) we made the new comparative negligence system retroactively applicable to all cases in which the issue could be timely raised, namely: (a) in the retrial of *Kaatz* itself; (b) in any trial beginning after the date of the *Kaatz* opinion, regardless of when the cause of action arose; (c) in any case pending on direct appeal when the *Kaatz* opinion was issued, so long as the plaintiff had asserted his entitlement to comparative negligence at trial and had preserved the point as a point on appeal; and (d) in any trial in progress on the date of the *Kaatz* opinion.

Under AS 23.30.060(a) an employer is conclusively presumed to have elected to pay compensation directly to employees for injuries sustained, unless notice is provided to the employee in writing indicating that the employer has workers' compensation insurance.[25] The notice of insurance must be posted in at least three conspicuous places at the place of employment, identifying the insurer, the insurer's address and the period covered by the insurance. AS 23.30.060. Therefore, as in *Appleton* the identity of the principal would be disclosed as either the insurer by posted notice or the employer by legislative decree. Therefore, assuming the adjuster is the insurer's agent, the adjuster would be an agent of a disclosed principal "not personally liable to the insured for his acts or for any contract which he may make on behalf of the disclosed principal," unless he acts in a tortious manner.[26] *See also Continental Ins. Co. v. Bayless & Roberts*, 608 P.2d 281, 287–288 (Alaska 1980) (an adjuster in the circumstance of a disclosed principal will only be held liable for its own tortious conduct). Here there is no tortious behavior alleged, but merely compliance with the insurers' position as to the continuing validity of section 175(d). Because the adjusters are not undisclosed agents and have not committed any tortious act against the insured injured workers, we reverse the

superior court's denial of the adjusters' motion for summary judgment.

The decision in *Otto Vienna* is REVERSED and REMANDED for further proceedings; the decision in *Sulkosky* is AFFIRMED.

---

25. AS 23.30.060 states:

*Election of direct payment presumed.* (a) An employer is conclusively presumed to have elected to pay compensation directly to employees for injuries sustained arising out of and in the course of the employment according to the provisions of this chapter, until notice in writing of insurance, stating the name and address of the insurance company and the period of insurance, is given to the employee.

(b) The notice shall be posted and kept on the premises of the employer or on the premises where the employer's operations are being carried on in three conspicuous places, at the office of the employer, at the mess house or boarding house if there is one, and in some conspicuous place on the premises or works. The notice shall be substantially in the following form, and the signature shall be witnessed by two witnesses:

EMPLOYER'S NOTICE OF INSURANCE
To the employees of the undersigned:

You and each of you are hereby notified that the undersigned is insured in the ............... Insurance Company, whose address is ............. and that the period covered by the insurance ......... in accordance with the terms, conditions and provisions to pay compensation to employees of the undersigned for injuries received as provided in the Act of the State of Alaska, known as the "Alaska Workers' Compensation Act."
  Signed.................
Witness:
  ................
  ................

26. Moreover, the acts of an adjuster do not normally create a contract obligation with the insured. 16A J. Appelman, Insurance Law and Practice § 8839.25, at 93 (rev. ed. 1981) ("While insurance adjusters had a duty to their principals, the insurance companies, to perform whatever tasks were assigned to them, such duty did not serve to create a contractual obligation between them and the insureds.").