**Wade TRUESDELL, Plaintiff,**

v.

**The HALLIBURTON COMPANY, INC., Defendant.**

**No. S–2259.**

Supreme Court of Alaska.

April 15, 1988.

---

Jeffrey D. Jefferson, Nordstrom, Steele & Jefferson, Kenai, and Jeffrey M. Feldman, Gilmore & Feldman, Anchorage, for plaintiff.

Kenneth P. Jacobus and Carl J.D. Bauman, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for defendant.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This case comes before the court on two questions certified by the United States District Court for the District of Alaska. In a recent decision, we recognized a minor child's independent cause of action for loss of parental consortium. *Hibpshman v. Prudhoe Bay Supply, Inc.*, 734 P.2d 991 (Alaska 1987). The questions certified in this case address the retroactive effect of that decision and the applicable statute of limitations.

### I. FACTUAL AND PROCEDURAL BACKGROUND.

Wade Truesdell was injured while working on an oil rig in Cook Inlet on January 25, 1985. On March 12, 1985, he filed a complaint in the superior court at Kenai against the Halliburton Company alleging negligence and asking for damages arising from medical costs, pain and suffering, and loss of income. On April 10, 1985, Halliburton successfully petitioned to have the case removed to the United States District Court for the District of Alaska.

On March 27, 1987, we decided *Hibpshman*, recognizing a minor child's independent cause of action for loss of parental consortium. On May 11, 1987, Truesdell moved to file his First Amended Complaint in the federal court, adding his two minor children as plaintiffs in a count for loss of parental consortium. Halliburton opposed the motion on the grounds that *Hibpshman* should not be applied retroactively, and that even if it were, the action in this

case was barred by a two-year statute of limitations. Because we did not address these issues in *Hibpshman,* United States District Court Judge James M. Fitzgerald certified to this court the following two questions of law:

> A. Should the rule of law first annunciated in *Hibpshman v. Prudhoe Bay Supply, Inc.,* recognizing a minor child's independent cause of action for loss of parental consortium resulting from injuries tortiously inflicted on her parent by a third person, be applied retroactively?
> B. If so, should Alaska Statute 09.10.-140, which tolls the statute of limitations for a minor from the date the cause of action accrues until the date she reaches the age of majority, be applied to parental loss of consortium claims?

On July 23, 1987, this court ordered that it would answer the certified questions. *See* Appellate Rule 407. In an Order entered October 28, 1987, we answered both questions affirmatively, stating an opinion would follow.

## II. AS 09.10.140 APPLIES TO CLAIMS FOR LOSS OF PARENTAL CONSORTIUM.

■ The language and logic of AS 09.-10.140, the tolling statute, read together with AS 09.10.070, the general tort limitations statute, demand that the statute of limitations on actions for loss of parental consortium be tolled until the child reaches the age of majority.

> The tolling statute provides as follows: *Disabilities of minority and incompetency.* If a person entitled to bring an action mentioned in this chapter is at the time the cause of action accrues ... under the age of majority, ... the time of the disability is not a part of the time limited for the commencement of the action. But the period within which the action may be brought is not extended in any case longer than two years after the disability ceases.

AS 09.10.140. Among the "action[s] mentioned in this chapter" are actions "for any injury to the person or rights of another not arising on contract and not specifically provided otherwise." AS 09.10.070(1). That section provides for a two year statute of limitations. *Id.* Loss of parental consortium is an injury to the rights of a child. Thus, a child has until two years after reaching age eighteen to commence an action for loss of parental consortium.

This conclusion is strengthened by *Haakanson v. Wakefield Seafoods, Inc.,* 600 P.2d 1087 (Alaska 1979). In that case, we applied the minor's tolling statute to wrongful death actions brought by minors, despite the fact that wrongful death actions are not mentioned in AS 09.10.[1] In so deciding, we relied on the legislative policies favoring protection of the interests of minors and compensation in wrongful death actions. *Id.* at 1090–91. In the instant case, the same policies and the plain language of the statute require that the minor's tolling statute apply to actions for loss of parental consortium.

Halliburton's first argument against this conclusion is that since actions for loss of parental consortium were not recognized in 1962 when the tolling statute was written, they were not "action[s] mentioned in this chapter." The fallacy in this argument is that AS 09.10.070(1) was written at the same time as AS 09.10.140. If subsection .070 does not apply, then there is no limitation period at all. Halliburton cannot have it both ways. If loss of parental consortium is an "injury to the rights of another" for purposes of the two-year limitations period of AS 09.10.070(1), then it must also be incorporated as such by the minor's tolling statute. The two statutes were clearly intended to be read together.

Halliburton's second argument against application of the tolling statute is that the "benefits from creating an independent cause of action for the child would be lost if the child's claim is allowed to languish interminably until two years after the child has reached the age of majority." Halliburton's solution apparently would be to deny the child any recovery at all if he or she missed the two-year limitation. We

---

1. Wrongful death actions are brought under AS 09.55.580.

implicitly rejected this argument in *Haak-anson*, and expressly reject it here. Loss of parental consortium is the quintessential action to which the tolling statute should apply, since it is an action recognized specially to benefit minor children.[2]

### III. *HIBPSHMAN* APPLIES RETROACTIVELY.

This court set forth the standards for determining whether a new rule of law is to be applied retroactively in *Commercial Fisheries Entry Comm'n v. Byayuk*, 684 P.2d 114 (Alaska 1984). In civil cases, retroactivity is the rule and pure prospectivity is the exception. *Id.* at 117. *See also Plumley v. Hale*, 594 P.2d 497, 502 (Alaska 1979) ("Absent special circumstances, a new decision of this court will be given effect in the case immediately before the court, and will be binding in all subsequent cases in which the point in question is properly raised, regardless of the fact that the events to which the law is applied occurred prior to the actual decision of the Court.") However, nothing requires this court to apply this rule inflexibly. *Byayuk*, 684 P.2d at 117. "We must treat each case announcing a new rule of law on the basis of the facts which are unique to it." *Id.*

■ In determining whether there are special circumstances warranting a departure from the general rule of retroactivity, the court considers four criteria:

A.   whether the holding either overrules prior law or decides an issue of first impression whose resolution was not foreshadowed;

B.   whether the purpose and intended effect of the new rule of law is best accomplished by a retroactive or a prospective application;

C.   the extent of reasonable reliance upon the old rule of law; and

D.   the effect on the administration of justice of a retroactive application of the new rule of law.

*Id.* We will analyze each of these criteria in turn.

### A.   WHETHER THE HOLDING WAS NOT FORESHADOWED.

The first criterion presents a threshold question rather than a balancing factor. *Byayuk*, 684 P.2d at 117–18, 119. If the new rule of law was clearly foreshadowed, it is not necessary to address the remaining three criteria, and the rule will apply retroactively. However, if the question answered by the new rule was "subject to rational disagreement," *Vienna v. Scott Wetzel Services, Inc.*, 740 P.2d 447, 450 (Alaska 1987), the threshold showing is met, and the court will weigh the remaining criteria.

In *Hibpshman*, we decided an issue of first impression, despite the fact that our holding there was foreshadowed to a certain extent. Our opinion in that case pointed out that since 1980 a majority of courts addressing the issue have recognized a cause of action for loss of parental consortium, 734 P.2d at 992, and that earlier decisions of this court had indicated a clear trend in this direction. *Id.* at 994. Nevertheless, no one could clearly predict that we would decide *Hibpshman* as we did. The question was therefore subject to rational disagreement, and we must proceed to balance the remaining three criteria.

### B.   THE PURPOSE AND INTENDED EFFECT OF *HIBPSHMAN*.

This court has repeatedly stated that the second test "is the single most important criterion to use in determining whether to apply a new rule of law retroactively or prospectively," once the threshold test is

---

2.   It is unlikely that there will be a large number of actions brought many years after the injury, because *Hibpshman* requires that the minor's action be joined with any action by the parents "whenever feasible." 734 P.2d at 997. Thus, if one or both of the parents sues for medical costs, pain and suffering, loss of income, or loss of spousal consortium, the minor would be barred from bringing a subsequent action for loss of parental consortium unless the child can show that it was unfeasible to join in the parents' action. *See infra* note 6 and accompanying text. Since the parents' potential actions are barred after two years by AS 09.10.070, it is likely that the vast majority of actions for loss of parental consortium will also be brought within that period.

met. *Byayuk,* 684 P.2d at 118. *See also Vienna,* 740 P.2d at 450; *Suh v. Pingo Corp.,* 736 P.2d 342, 344 (Alaska 1987). The purpose and intended effect of *Hibpshman* was primarily to provide compensation to minor children who suffer losses as a result of the injury of a parent. "When a parent is seriously injured, his or her child suffers a loss of enjoyment, care, guidance, love and protection, and is also deprived of a role model." 734 P.2d at 994. This purpose is best advanced by applying the decision retroactively, so that compensation will be available to the largest number of minors who have suffered these losses.

## C. REASONABLE RELIANCE UPON THE OLD RULE.

The third test—reasonable reliance on the old rule of law—"is of minimal importance where the purpose and intended effect of the new rule of law clearly justifies a retroactive application." *Byayuk,* 684 P.2d at 119. *See also Vienna,* 740 P.2d at 451.

We first observe that any reliance on the assumption that there was no cause of action for loss of parental consortium was not well founded. *Hibpshman* did not overrule any previous decisions of this court, *cf. Suh,* 736 P.2d at 343 (1985 decision overruled 1963 decision by name), did not declare any presumptively valid statute unconstitutional, *cf. Vienna,* 740 P.2d at 448 (underlying decision declared AS 23.30.-175(d) unconstitutional), and did not strike down any presumptively valid administrative interpretations. *Cf. Byayuk,* 684 P.2d at 116 (underlying decision struck down Commission's interpretation of 20 AAC 05.-630(b)(2)). Instead, *Hibpshman* merely decided a question that this court had never before addressed. Although *Hibpshman* is inconsistent with the common law in some jurisdictions, as noted above a majority of courts that have addressed the issue in recent years have recognized a cause of action for loss of parental consortium, 734 P.2d at 992, and earlier decisions of this

court indicated a clear trend in this direction. *Id.* at 994. Thus, at least in recent years, it would have been imprudent for insurers and buyers of insurance to rely on an assumption that they could never be held liable for damages from loss of parental consortium. Such an evolution of the law, especially where reasonably foreshadowed, is the type of risk that insurers and their customers should take into account in setting rates and fixing liability limits.

Halliburton argues that it would be prejudiced by retroactive application of *Hibpshman* because of two types of reliance. The first is that it would have bought more insurance if it had known that it could be held liable for loss of parental consortium.

This court has not uncritically accepted insurance reliance arguments. We recognize that a change in the law may create additional tort liability which cannot be precisely anticipated by potential defendants. With regard to liability of insurers we have said:

An insurer's reliance interest is insufficient to compel prospective application of a change in the law unless the insurer presents a compelling case of grave financial consequences.

*Vienna,* 740 P.2d at 451 (quoting *Suh,* 736 P.2d at 348 (Matthews, J., dissenting)) (footnote omitted).[3] *See also Suh,* 736 P.2d at 345 ("One risk inherent in any insurance transaction is that laws establishing liability may change.") The equities of Halliburton's argument are similar to those of the insurance company in *Vienna*; had it anticipated the new risk it would have better allocated the costs associated with increased liability. We reject Halliburton's argument. Compensating injured plaintiffs cannot rest solely upon whether a defendant anticipated liability. Rather, what is required is a "compelling case of grave financial consequences." Halliburton did not make this showing.

Halliburton's other reliance argument is that it did not prepare a defense to an

---

3. This is especially true where the change in the law "should have been seen as, at the least, a significantly realistic possibility." *Vienna,* 740 P.2d at 451 n. 21 (quoting *Suh,* 736 P.2d at 348 n. 2 (Matthews, J., dissenting) (quoting *EEOC v.*

*Texas Industries,* 782 F.2d 547, 552 (5th Cir. 1986) (upholding retroactive application of change in pregnancy benefits under Title VII required by Supreme Court))).

action for loss of parental consortium. This is not a strong argument. First, the case is still in discovery, and there is nothing to prevent Halliburton from preparing its defense now. While it may be harder to prove the psychological effects on the children now than it was at a time closer to the accident, this may disadvantage the plaintiffs more than the defendant. Further, the new claim adds little more to the burden of discovery. Everything except the effects on the children is the subject of other claims in the action.

## D. EFFECT ON THE ADMINISTRATION OF JUSTICE.

Our decision in *Hibpshman* will almost certainly increase litigation. We recognized this and flatly rejected it as a ground to deny recognition to the new cause of action. Quoting the Wisconsin Supreme Court, we observed that "this argument 'has been voiced in almost every instance where the courts have been asked to recognize a new cause of action.'" *Hibpshman*, 734 P.2d at 996 (quoting *Theama v. City of Kenosha*, 117 Wis.2d 508, 344 N.W.2d 513, 521 (1984)). Thus, the fact that retroactive application of *Hibpshman* may increase the number of suits is not sufficient reason to limit retroactive application of the cause of action. An increase in the amount of justice should not be recognized as a burden on the administration of justice.

A real concern in considering the burden on the administration of justice is whether a retroactive application will require reversal of prior verdicts, *see Byayuk*, 684 P.2d at 120 (automatic reversal of prior verdicts is serious, but merely requiring new trial is less severe), or reopening of long decided cases. *See id.* at 121; *Suh*, 736 P.2d at 345. For example, in *Suh* we expressed concern about reopening compensation awards made up to twenty-two years earlier. 736 P.2d at 345. The instant case poses a similar problem: retroactive application will open the courts to litigation over accidents that occurred up to twenty years earlier.

In situations where the parents never filed an action, this will not pose a special threat to the administration of justice because it will not be necessary to reopen any closed cases. It may force the courts to rule on claims for injuries that occurred long ago, but this is always so with actions brought under the minor's tolling statute.

The more troubling threat to the administration of justice will arise if courts have to adjudicate actions brought by minors when their parents' actions have been already decided or settled. This scenario may lead to a multiplicity of suits over the same accident. It may require defendants to resurrect defenses prepared years earlier and call into question the integrity of final judgments by disturbing the repose of defendants who thought they had tried or settled all potential claims stemming from one accident. A further important concern is the risk of double recovery: when an injured parent files an action for damages, but the minor children do not file an action for loss of parental consortium, it is possible that a jury nevertheless will consider the effects of the parent's injury on the children in calculating the parent's recovery. If this is so, to award damages in a subsequent separate action for loss of parental consortium would give the plaintiffs a double recovery. *See Schreiner v. Fruit*, 519 P.2d 462, 466 (Alaska 1974) (creating rule of mandatory joinder of actions for loss of spousal consortium with the injured party's damages action based on considerations of judicial economy and fear of double recovery).

In *Suh*, we held that while "administrative inconvenience alone would not justify holding against complete retroactivity," when combined with a degree of unfairness to defendants it can justify a holding of limited retroactivity. 736 P.2d at 345–46. Moreover, we noted in *Byayuk* that the effect on the administration of justice "is useful in determining not only whether a new rule should apply retroactively, but also how far the application should extend." 684 P.2d at 119, *quoted in Vienna*, 740 P.2d at 451.

## IV. LIMITED RETROACTIVE APPLICATION OF *HIBPSHMAN*.

Because of our concerns about the effects on the administration of justice and

the fairness of requiring defendants to re-open files regarding accidents occurring up to twenty years ago, we limit the retroactive application of *Hibpshman.*

Halliburton argues that we should limit *Hibpshman* by barring any action for which the statute of limitations on the parent's loss of spousal consortium claim had run as of the date *Hibpshman* was decided. *See Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E.2d 690, 696 n. 12 (1980). Under this approach, all actions stemming from accidents occurring more than two years before the date *Hibpshman* was decided, including the Truesdell children's action, would be barred. *See Gore v. Daniel O'Connell's Sons, Inc.,* 17 Mass.App. 645, 461 N.E.2d 256, 260 (1984) (where mother's action was barred before decision in *Ferriter,* children's action was also barred, despite minor's tolling statute). The limitations period on actions stemming from accidents occurring within the two-year period before *Hibpshman* would continue to be tolled by AS 09.10.140 since the parent's action was not yet barred at that time.

This approach goes too far. It bars actions such as those in the instant case, where allowing the children's claim to simply be joined with that of their father poses no great unfairness or burden on the administration of justice. It merely requires more discovery and an extra claim to defend, as will always be the case where a child's loss of consortium claim is joined in his or her parents' action. Halliburton's suggested approach would also bar minor children's actions for loss of parental consortium where the parents never brought an action. There is no strong reason to bar these actions since they present no risk of double recovery, they do not upset final judgments or settlements, and they do not create a multiplicity of suits grounded in the same occurrence. Therefore we reject this approach.

At the other extreme is the rule adopted in Iowa, which allows retroactivity limited only by the minor's tolling statute. *Beeck v. S.R. Smith Co.,* 359 N.W.2d 482, 484–87 (Iowa 1984). The court in *Beeck* acknowledged the potential problem of a multiplicity of suits and double recovery, *see id.* at 486–87, but nevertheless appeared to leave open the possibility that a minor could file an action after the parents' action was decided by arguing that it was not feasible to join the claims before the court recognized a cause of action for loss of parental consortium. *See id.* at 486. We do not believe this is the proper definition of "feasible." *See infra.* In addition, we believe the need for finality of judgment counsels against the relitigation of actions previously considered closed.

We conclude that the best rule is to bar any action for loss of parental consortium arising from an accident occurring before *Hibpshman* where one or both of the parents brought an action for damages related to the accident—such as medical costs, loss of income, pain and suffering, or loss of spousal consortium—and where the parents' actions have been the subject of a settlement or final judgment. The only exception to this would be in those relatively rare instances where it was factually infeasible to join the minor's claim with that of the parents, as where the minor has a legal guardian who refuses to permit joinder. Otherwise, the minor's tolling statute applies as in any other case.[4] This allows the Truesdell children to pursue their claims in the instant case, since their father's case is still in discovery.[5]

Jurisprudentially, this result flows naturally from the holding of *Hibpshman,* which "require[s] joinder of the minors' consortium claim with the injured parent's claim whenever feasible." 734 P.2d at 997. We anticipate minors will argue that it was unfeasible to join their claims with those of their parents because the cause of action

4. Defendants contend that the rule suggested here will resurrect long forgotten incidents dating back as far as twenty years. While this is certainly true, it is always a problem in cases where the minor's tolling statute applies. The

legislature determined that it is more important to protect the interests of minors.

5. Although we refer to this as a rule which gives limited retroactivity to *Hibpshman,* if *Hibpshman* is considered as laying down a rule of

for loss of parental consortium was not yet recognized. We reject this argument in advance; this is not what we meant by "feasible."[6]

## V. CONCLUSION

Our decision in *Hibpshman* is to be given retroactive effect to best advance the purposes of that decision, since retroactive application will not implicate any strong reliance interests and will not unduly burden the administration of justice. However, to avoid a multiplicity of suits stemming from the same accident, and to avoid the risk of double recovery, minor children's actions for loss of parental consortium grounded in accidents occurring before *Hibpshman* was decided should be barred where one or both of the parents brought an action based on that accident which was concluded by settlement or judgment unless joinder was not feasible.

---

mandatory joinder, as well as permitting an action for loss of parental consortium, then the rule we adopt is simply one of retroactive application. That is the approach which we took in the analogous area of spousal consortium. *See Schreiner v. Fruit*, 519 P.2d 462, 467 (Alaska 1974).

**6.** In *Schreiner*, 519 P.2d at 467, we rejected the argument that joinder of a spousal consortium claim was impossible on the grounds that a cause of action for loss of consortium had not been recognized at the time that joinder was required.