**Edward K. METCALF, Appellant,**

v.

**FELEC SERVICES, Alaska Workers'
Compensation Board, and the
Superior Court, Appellees.**

**No. S–2790.**

Supreme Court of Alaska.

Jan. 5, 1990.

Edward K. Metcalf, Anchorage, pro se.

Julie E. Bryant, Faulkner, Banfield, Doogan and Holmes, Anchorage, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This case presents two issues. The first is whether the Alaska Workers' Compensation Board (Board) correctly held that Edward K. Metcalf had unreasonably refused treatment after suffering a head injury resulting in recurring headaches. The second issue, raised *sua sponte* by this court, is whether the Board has the statutory authority to ratify an employer's unilateral act of suspending benefits when the employer believes the employee is unreasonably refusing medical treatment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 22, 1982, Metcalf struck his head against a stationary forklift while working for Felec Services (Felec) as a pipefitter. Following his injury, Metcalf began to complain of a series of recurring headaches. Metcalf was initially diagnosed as suffering from a combination of depression and post-concussion syndrome. In the course of seeing numerous medical professionals, Metcalf has steadfastly refused prescribed treatment. Metcalf's refusal consists primarily of a near total unwillingness to take any recommended prescription medicine. Metcalf has also refused several diagnostic procedures, including CAT scans with and without dye and a digital subtraction angiogram (DSA).

The diagnostic procedures were recommended by Dr. Alpha, a neurologist, to see if there was (or was not) some underlying physical reason for Metcalf's condition. Dr. Alpha testified that the risk of any adverse reaction to a CAT scan with dye, including slight reactions such as hives, was one in 2,000, with the chance of any serious reaction being far less. Dr. Alpha also testified there was no possibility of side effects from a CAT scan without dye and the total amount of radioactivity exposure would be equal to that involved in a cross-country plane flight. Metcalf refused to submit to a CAT scan, given this knowledge.

Dr. Kastella described the DSA as involving the insertion of a catheter into the heart through a vein. Dye is then injected. Dr. Kastella estimated the risk of death as a fraction of one percent.

Metcalf also refused proffered prescription medications that might have alleviated his headaches, including anti-depressants and anti-inflammatories (e.g. aspirin, Motrin). Dr. Cates testified that none of these drugs posed any significant risk of serious side-effects. Dr. Alpha agreed, and further testified that any minor side-effects which might result were easily controllable. Dr. Kastella offered similar testimony. All physicians agreed that the medications would likely alleviate Metcalf's symptoms while time healed their cause, assuming that they in fact had an organic root.

Upon learning of Metcalf's disagreements with his doctors, his employer/insurer, Felec, unilaterally suspended his benefits on the ground that he was unreasonably refusing medical treatment effective January 6, 1983. The Board, by order dated July 31, 1986 determined that although Metcalf's injury was compensable, he had unreasonably refused medical treatment within the meaning of AS 23.30.095(d). The Board also ruled that Felec need only resume paying compensation to Metcalf should he cease his refusal to follow "a reasonable medical regimen prescribed by the neurologist of his choice...."

Metcalf filed a "Request for Reconsideration" of the Board's decision on June 15, 1987. The Board noted that the Alaska Workers' Compensation Act (AWCA) does not provide for reconsideration of prior decisions. *See* AS 23.30.130. The Board treated Metcalf's petition as a request for modification under AS 23.30.130. The Board then denied his petition. The superior court, sitting as an intermediate appellate court, AS 23.30.125; Appellate Rule 601, affirmed. Metcalf appeals.

## II. DISCUSSION

A. THE BOARD'S CONCLUSION THAT METCALF UNREASONABLY REFUSED TO ACCEPT MEDICAL TREATMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

The Board relied on AS 23.30.095(d) of AWCA:

If at any time during the period the employee unreasonably refuses to submit to medical or surgical treatment, the board may by order suspend the payment of further compensation while the refusal continues, and no compensation may be paid at any time during the period of suspension, unless the circumstances justified the refusal.

■ Because this appeal stems from the Board's denial of modification, not the Board's original decision, we decide only whether "substantial evidence" exists in the record as a whole from which the Board could conclude that Metcalf's refusal of treatment is unreasonable. *Cf. Fluor Alaska, Inc. v. Mendoza,* 616 P.2d 25, 27–28 (Alaska 1980); *Delaney v. Alaska Airlines,* 693 P.2d 859, 863 (Alaska 1985). *See also Interior Paint Co. v. Rodgers,* 522 P.2d 164, 169 (Alaska 1974) (appeal from agency denial of modification is not to become a "back-door route to retrying a case"). We do not reweigh the evidence, but determine whether there is substantial evidence in light of the whole record that a reasonable mind might accept as adequate to support the Board's conclusion. *Delaney,* 693 P.2d at 863; *Miller v. ITT Arctic Services,* 577 P.2d 1044, 1046 (Alaska 1978).

■ Factors to be used in determining the reasonableness of treatment refusal include the risk and seriousness of side effects, the chance of cure or improvement, and any first-hand negative experience or observations of the patient, regarding either this procedure or medical care in general. *Fluor Alaska, Inc.,* 616 P.2d at 27–29.

■ With these principles in mind, we conclude that there is substantial evidence supporting the Board's determination that Metcalf unreasonably refused treatment. No major, life-threatening surgery was proposed. The specific evidence relied upon by the Board included the unanimous testimony of several physicians concerning the substantial unlikelihood of negative side effects from the recommended medication, and the ability to substitute alternative compounds if side effects were experi-

enced. Although none of the physicians stated the treatment could cure Metcalf's disability, all manifested a belief that his problems could likely be at least partially alleviated by medication. Furthermore, it is uncontradicted that Metcalf had no negative first-hand experience with any of the treatments suggested.

## B. PRE–ORDER NON–PAYMENT OF METCALF'S BENEFITS.

Upon learning of some of Metcalf's refusals of treatment, Felec suspended his benefits effective January 6, 1983. There was no Board involvement in Felec's action. The Board did not address the issue until its order dated July 31, 1986, in which it ruled that Felec would only have to resume paying benefits if and when Metcalf ceased his refusal to follow "a reasonable medical regimen prescribed by the neurologist of his choice...."

■ We asked the parties for supplementary briefing on the issue of whether the Board has the authority to issue an order retroactively ratifying a suspension of benefits by the claimant's carrier on the ground of unreasonable refusal to submit to medical treatment. We conclude that it does not.

We conclude that the Board's action is contrary to the clear language of AS 23.30.-095(d): "The *board* may *by order* suspend the payment of *further* compensation...." (Emphasis added).

Metcalf contends that the statute is clear and means what it says: the Board may by order suspend further payments. "Further," Metcalf argues, means in the future from the time of its order, not in the past. While the Board had authority to suspend payments after July 31, 1986, Metcalf contends that it could not do so before then.

We find Metcalf's argument persuasive. The Board is the entity empowered to suspend a claimant's benefits by order. The employer/insurer is not. AS 23.30.095(d), by negative implication, limits the authority of the Board to suspending *further* bene-

fits by order.[1]

Where a statute's meaning, as here, appears clear and unambiguous, the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent. *Ward v. State,* 758 P.2d 87, 90 n. 5 (Alaska 1988); *Municipality of Anchorage v. Sisters of Providence in Washington, Inc.,* 628 P.2d 22, 27 n. 6 (Alaska 1981); *State, Dept. of Nat. Resources v. City of Haines,* 627 P.2d 1047, 1049 (Alaska 1981). Felec has not carried its burden.

Felec contends that if the Board is not able to ratify unilateral suspensions of employee benefits, then employees would be encouraged to prolong their disabilities and not mitigate their damages. This contention does not justify placing a strained meaning on AS 23.30.095(d). What the statute's plain language requires insurers to do is obtain Board approval before they cut off benefits based upon unreasonable refusal of treatment. Insurers are free to petition the Board to do so as soon as they are able to make out a good faith case of unreasonable refusal. *See* DR 7–102(A)(1).

Felec also contends that such an interpretation of AS 23.30.095(d) opens the door for employees to purposefully drag out a hearing, obtain unnecessary continuances, and otherwise connive to enlarge the period during which benefits are still being paid. This contention is answered by the time limits imposed on Board action by the Alaska Administrative Code. An insurer may request a hearing by affidavit within 20 days after a motion is filed. 8 AAC 45.-070(b)(1). Continuances, postponements,

cancellations, or changes of scheduled hearings are not favored by the Board and will not be routinely granted. 8 AAC 45.-074(a). They are granted only for carefully delimited "good cause." [2] *Id.* If the Board finds that a request for a delay by an employee is not for good cause, it can and should deny it. *Id.* Furthermore, we find nothing in AS 23.30.095(d) which prohibits the Board from giving prompt attention to claims of unreasonable refusal.[3] If and to the extent that Felec can demonstrate that Metcalf acted unreasonably and thereby caused delay in the issuance of the Board's decision, the Board may, in its discretion, offset Metcalf's benefits. The central question is when, but for unreasonable conduct by the claimant in the presentation of the case to the Board, would the Board have issued its decision?

Requiring the insurer to petition the Board before suspending benefits on this ground is sound policy. The insurer has superior legal and economic resources, relative to an injured employee, to effect a change in the status quo of ongoing payments. To allow an insurer to unilaterally suspend an injured worker's benefits without the intervention of a neutral arbiter is to put the party with inferior resources in the position of seeking legal redress. A major purpose of AWCA is to furnish "a simple, speedy remedy for injured workers whereby they may be compensated for injuries arising out of their employment." *Hewing v. Peter Kiewit & Sons,* 586 P.2d 182, 187 (Alaska 1978). AWCA is to be construed in accordance with its "liberal humanitarian purposes." *Burgess Constr.*

---

1. Subsection (d) should be contrasted with subsection (e), recently amended by the legislature. AS 23.30.095(e) illustrates the proposition that the legislature understands the difference between a self-executing and a non-self-executing sanction, and did not intend the sanction of subsection (d) to be self-executing. *See* 2A *Sutherland Statutory Construction* § 51.02 (4th ed.1985). Felec does not contend that AS 23.30.-095(e) is apposite.

2. Good cause exists only when (1) a material witness is unavailable on the scheduled date and the taking of the witness' deposition is not feasible; (2) a party or representative of a party is unavailable because of an unintended and

unavoidable court appearance; (3) a party or representative becomes ill; (4) a party, a representative to a party, or a material witness becomes unexpectedly absent from the state; (5) irreparable harm will result from a failure to grant the requested continuance; or (6) an agreed settlement has been reached by the parties less than 14 days before a scheduled hearing.

3. The Board may also wish to consider adoption of regulations allowing a temporary or conditional order of suspension of further benefits upon a *prima facie* showing by a carrier. Nothing in AS 23.30.095(d) prohibits this.

*Co. v. Lindley,* 504 P.2d 1023, 1025 (Alaska 1972). Forcing the injured employee to move the Board to action is not conducive to a self-executing system of redress.

We have recognized that the question of whether a treatment refusal is "reasonable" is a somewhat unique, "complex fact judgment involving a multitude of variables." *Fluor Alaska, Inc. v. Mendoza,* 616 P.2d 25, 27 (Alaska 1980); 1 A. Larson, *The Law of Workmens' Compensation* § 13.22, at 3–419 (1978). It is therefore one especially well suited to judicial or quasi-judicial resolution. An adverse insurer is not the best (or even adequate) judge of whether a refusal is unreasonable.

### C. OUR DECISION APPLIES BOTH PROSPECTIVELY AND TO MET-CALF.

█ Felec urges that should we decide, as we have, that the Board lacks authority to retroactively ratify unilateral suspensions under AS 23.30.095(d), our decision should only be applied prospectively. We have broad discretion in deciding whether or not to apply decisions purely prospectively. *E.g., Alaskan Village, Inc. v. Smalley,* 720 P.2d 945, 949 (Alaska 1986); *Plumley v. Hale,* 594 P.2d 497, 502–05 (Alaska 1979).

█ Absent special circumstances, however, we have exercised our discretion so that a new rule of law will apply in the case before the court and in all subsequent cases. *Plumley,* 594 P.2d at 502–03. A party to the present case may escape the application of the rule to itself only if equity requires it. *Id.* at 504. In *Alaskan Village, Inc.,* we stated:

[T]he rule may apply purely prospectively if (1) the rule is one of first impression, or overrules prior law and was not foreshadowed by prior decisions, (2) (the) defendant justifiably relied on prior interpretations, (3) undue hardship would (otherwise) result and (4) the purpose and effect of the holding is best served by a purely prospective application.

*Alaskan Village, Inc.,* 720 P.2d at 949. We believe the usual rule is appropriate here.

The first factor has been utilized as a threshold requirement. *Commercial Fisheries Entry Comm'n v. Byayuk,* 684 P.2d 114, 117–18 (Alaska 1984); *Truesdell v. Halliburton Co., Inc.,* 754 P.2d 236, 239 (Alaska 1988). It is satisfied; this is a question of first impression.

The second factor, justifiable reliance on prior interpretations, has no bearing here, since there have been no relevant prior interpretations of AS 23.30.095(d).

Felec, however, has not demonstrated sufficient undue hardship.

"[I]n the vast majority of cases the retrospective effect of judge-made law is felt either to involve no hardship or *only such hardship as is inevitable where no rule has been declared.*" *Warwick v. State ex rel. Chance,* 548 P.2d 384, 395 (Alaska 1976), *quoting* B. Cardozo, *The Nature of the Judicial Process* 146 (1921) (emphasis added). The hardship of a new rule is all that is felt by Felec here. We are reversing no decisional law that Felec relied on.

Additionally, we have examined undue hardship in the context of the tribulations of workers' compensation insurers in *Vienna v. Scott Wetzel Services, Inc.,* 740 P.2d 447 (Alaska 1987) and *Suh v. Pingo Corp.,* 736 P.2d 342 (Alaska 1987). In *Vienna,* we held that "[a workers' compensation] insurer's reliance interest is insufficient to compel prospective application of a change in the law unless the insurer presents a compelling case of grave financial consequences." *Vienna,* 740 P.2d at 451, *quoting Suh,* 736 P.2d at 348 (Matthews, J., dissenting). Felec does not suggest in its brief that such grave consequences will ensue should it lose on this issue. Unreasonable refusal cases seem uncommon in Alaska.

Moreover, any unfairness to the insurer, which is compelled to pay benefits that were not foreseen in the insurance rate structure, is at least equally balanced by the unfairness which each claimant is forced to suffer when he does not receive the benefits which the law, properly construed, affords him, and which the legislature intended to provide.

Every dollar saved by an insurance carrier under an improper construction of the law is a dollar taken from the legal entitlement of a claimant. We have previously said that the Workers' Compensation Act should be liberally construed in favor of claimants. *Hood v. State,* 574 P.2d 811, 813 (Alaska 1978). When the equities are evenly divided this rule of construction requires a decision in favor of the claimants.

*Vienna* at 452 n. 23, *quoting Suh* at 349 (Matthews, J., dissenting). The equities are equally balanced here, with neither party having acted commendably. Metcalf has behaved unreasonably, yet Felec has subverted the procedure for review.

The fourth factor requires examination of whether the purpose and effect of the holding would be best served by a purely prospective application. The purpose and effect of our holding is to give effect to a clear statute requiring that claims of "unreasonable" refusal be decided by a neutral arbiter before benefits are suspended, as necessitated by the complexity of a "reasonableness" inquiry.[4]

---

**4.** Our decision extends to workers' compensation cases "in the pipeline" as of the date of decision of this case. *Vienna* at 452. This includes those non-party workers whose claims remain open to adjudication and those who

### III. CONCLUSION

The portion of the Board's order finding Metcalf's refusals of treatment unreasonable is AFFIRMED. Metcalf's benefits were properly suspended beginning on the date of the Board's order, July 31, 1986. The portion of the Board's order ratifying the suspension of benefits prior to its order is REVERSED, and the case is REMANDED to the Board with directions to reinstate Metcalf's benefits consistent with this opinion.

On REMAND, if Felec can demonstrate that some of the delay in the issuance of the Board's order is attributable to unreasonable conduct by Metcalf, the Board may in its discretion offset the reinstatement of Metcalf's benefits if and to the extent Felec can show he unreasonably fomented decisional delay.

have preserved the issue for appeal, assuming the time for appeal has not expired. *Id.*