Bruce COLE (deceased) and Lorena Cole (widow), Appellants,

v.

KETCHIKAN PULP COMPANY and Alaska Timber Insurance Exchange, Appellees.

No. S–4783.

Supreme Court of Alaska.

April 23, 1993.

Chancy Croft, Anchorage, for appellants.

J.W. Peterson, Ziegler, Cloudy, King & Peterson, Ketchikan, for appellees.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

## I. BACKGROUND

Bruce Cole (Cole) suffered a back injury on August 31, 1982 while working for Ketchikan Pulp Company (Ketchikan Pulp). Cole was paid disability compensation benefits for a period of time until disputes between the parties resulted in his benefits being terminated.

In January 1988, Cole's attorney, Phillip Pallenberg (Pallenberg), offered to settle Cole's claims for $150,000 plus statutory attorney's fees. Ketchikan Pulp's attor-

ney, Paul Hoffman (Hoffman), made a counteroffer of $30,000 plus statutory attorney's fees. The parties were not able to reach an agreement.

While Cole's disability claim was pending, the parties continued to dispute a number of issues.[1] On May 9, 1989, Cole was deposed by Hoffman. Pallenberg testified that following the deposition, Pallenberg and Cole talked about settling the case. By the end of May the parties were discussing a settlement of $75,000 plus statutory attorney's fees. Lorena Cole testified that at the time of settlement negotiations, Cole had not as yet been diagnosed as having cancer.

Cole learned that he had prostate cancer on May 23, 1989. Hoffman and Pallenberg had telephone conversations on May 24th and 25th and reached agreement to settle for $75,000 on May 30, 1989. Pallenberg confirmed the agreement by letter to Hoffman. The letter reads as follows:

> Dear Paul:
> This is to confirm that we have agreed to settle this case for a gross settlement amount of $75,000.00. This amount will be allocated $68,500.00 to Mr. Cole, and $6,500.00 for costs and attorneys fees.

Hoffman then drafted a Compromise and Release. During the settlement discussions Pallenberg did not disclose to Hoffman that Cole had been diagnosed as having cancer.

Hoffman sent the Compromise and Release to Pallenberg on June 7, and requested that Cole and Pallenberg both sign and return the document so that it could be filed with the Workers' Compensation Board (Board) for its approval. Pallenberg signed the Compromise and Release and mailed it to Cole. In the June 9th transmittal letter, Pallenberg indicated that he was aware of Cole's serious "unrelated health condition" and urged Cole to "execute the agreement quickly." Pallenberg also advised Cole that "it is important that this settlement be signed as soon as possible, because of the possibility that [the Employ-

er] could back out of it if they learn of your illness before it is approved."

Cole underwent prostate and bowel surgery on June 7, 1989. A blood clot formed and migrated, resulting in Cole's death. Cole died before receiving and signing the Compromise and Release.

Pallenberg subsequently filed an Application for Adjustment of Cole's Temporary Total Disability (TTD) benefits, but did not submit the Compromise and Release to the Board for approval. Pallenberg testified that in his view, at the time of Cole's death, the settlement was not enforceable. Hoffman testified that he saw no need to withdraw the agreement, because in his view it was void as soon as Cole died. Thus, no action was taken by either attorney to enforce or to withdraw the settlement.

Cole was survived by Lorena, his wife of 44 years, and four daughters. On May 31, 1990, represented by different counsel, Lorena submitted the Compromise and Release to the Board for its approval. After hearing the matter the Board refused to approve the Compromise and Release because in its opinion the agreement, which had been signed only by Mr. Pallenberg, failed to meet the signature requirements of 8 Alaska Administrative Code (AAC) 45.-160(b) (1991). Lorena then appealed the Board's decision to the superior court. The superior court affirmed the Board's decision concluding that the Board:

> [H]ad the power to waive the signature. I don't believe that they had to. I think that the information with respect to having cancer and so forth is something that they could be concerned about and feel like that in those circumstances it simply wasn't the equitable thing to do.... And I think that at this time when the board got this agreement that the parties were not all in agreement, and I think that they had the discretion not to waive the signature.

## II. STANDARD OF REVIEW

■ Since the superior court was acting as an intermediate court of appeal, this

---

**1.** The Workers' Compensation Board requires that there be a bona fide dispute between the parties in order for a Compromise and Release

to be approved. The parties agree that there were many disputed issues throughout the years the claim was pending.

court may "independently [scrutinize] directly the merits of the administrative determination." *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987).

This matter requires us to address the appropriate standard of review regarding two issues: First, the Board's interpretation of AS 23.30.012 and the statute's implementating regulation, 8 AAC 45.160(b), and secondly, the Board's interpretation of 8 AAC 45.195, the regulation concerning waiver of procedures. The parties contest the appropriate standard of review for each issue.

Cole argues that both the question of whether the unsigned Compromise and Release Agreement complied with AS 23.30.012 and whether the Board "erred in failing to apply 8 AAC 45.195 so as to prevent a 'manifest injustice' " are questions of law that require us to substitute our independent judgment for the judgment of the Board. Cole contends that the issues do not involve agency expertise.

Ketchikan Pulp argues that the language of AS 23.30.012 commits the approval or denial of Compromise and Releases "to agency expertise or agency discretion," and that therefore this court should review such actions using the rational basis standard under the logic of *Phillips v. Houston Contracting, Inc.*, 732 P.2d 544, 547 (Alaska 1987), *appeal after remand, Houston Contracting, Inc. v. Phillips*, 812 P.2d 598 (Alaska 1991). Similarly, Ketchikan Pulp contends that in our review of the waiver issue we should employ the rational basis standard, and restrict our scrutiny to the question of whether the Board engaged in reasoned decisionmaking.

■ In *Tesoro Alaska Petroleum v. Kenai Pipe Line*, 746 P.2d 896, 903 (Alaska 1987) this court stated that "[t]he rational basis test is used where the questions [of law] at issue implicate special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function." Since no special expertise is required to determine whether or not a proposed settlement agreement conforms with the requirements of 8 AAC 45.160 we review this issue under the substitution of judgment standard.

Similarly, we review the question of whether the Board, under 8 AAC 45.195, has authority to waive the signature requirement of 8 AAC 45.160(b) under the substitution of judgment standard.

### III. DID THE WORKERS' COMPENSATION BOARD ERR IN DENYING LORENA COLE'S REQUEST TO APPROVE A COMPROMISE AND RELEASE AGREEMENT WHICH WAS NEGOTIATED BUT NOT EXECUTED BEFORE COLE'S DEATH?

■ Cole initially contends that the Compromise and Release met the statutory requirements of AS 23.30.012. This statute provides:

**Agreements in regard to claims.** At any time after death, or after 30 days subsequent to the date of the injury, the employer and the employee or the beneficiary or beneficiaries, as the case may be, have the right to reach an agreement in regard to a claim for injury or death under this chapter in accordance with the applicable schedule in this chapter, but a memorandum of the agreement in a form prescribed by the board shall be filed with the board. Otherwise, the agreement is void for any purpose. If approved by the board, the agreement is enforceable the same as an order or award of the board and discharges the liability of the employer for the compensation notwithstanding the provisions of AS 23.30.130, 23.30.160, and 23.30.245. The agreement shall be approved by the board only when the terms conform to the provisions of this chapter and, if it involves or is likely to involve permanent disability, the board may require an impartial medical examination and a hearing in order to determine whether or not to approve the agreement. The board may approve lump-sum settlements when it appears to be to the best interest of the employee or beneficiary or beneficiaries.

More specifically, Cole argues that the parties reached an agreement in regard to a claim; a memorandum of the agreement in a form prescribed by the Board was filed with the Board; and the settlement was in the best interests of Lorena Cole.

Ketchikan Pulp responds that the Board was correct in finding that the Compromise and Release was not enforceable because it did not meet the mandatory requirements of AS 23.30.012 and 8 AAC 45.160. Ketchikan Pulp notes that AS 23.30.012 both requires a memorandum of the settlement agreement to be filed with the Board in a prescribed form, and conditions Board approval on the agreement's conformance with the provisions of the chapter. Ketchikan Pulp contends that, read as whole, "the process which [AS 23.30].012 contemplates is that C & R's [sic] will be filed with the Board and subject to Board approval before they are enforceable."

Additionally, Ketchikan Pulp notes that Cole's position is inconsistent with the requirements of 8 AAC 45.160(b), (c), and (d). Since 8 AAC 45.160 was adopted by the Board pursuant to its general power under AS 23.30.005 to adopt regulations Ketchikan Pulp submits that "the regulation carries with it a presumption of validity and ... reflects that the Board is charged with specialized expertise in its statutory interpretation of § .012." [2]

Ketchikan Pulp further asserts that the Compromise and Release by its very terms is unenforceable as it conditions enforceability on Board approval. It refers to that portion of the agreement which states:

> [T]he parties agree that upon approval of this Compromise and Release by the Alaska Workers' Compensation Board and the payment of the compromise funds aforesaid in accordance with the provisions of this Compromise and Release, this Compromise and Release shall be enforceable and shall forever discharge from liability the employer....

Cole is incorrect in her assertion that the agreement is valid under the Workers' Compensation Act and binding on the parties. Alaska Statute 23.30.012 unambiguously mandates that "a memorandum of the agreement in a form prescribed by the board shall be filed with the board. Otherwise, the agreement is void for any purpose. If approved by the board, the agreement is enforceable...."

Further, AS 23.30.012 provides in part that "the agreement shall be approved by the board only when the terms conform to the provisions of this chapter...." Pursuant to this statutory authorization the Board promulgated 8 AAC 45.160 which provides a regulatory scheme for obtaining the approval of agreements. In addition to requiring agreements to be submitted in writing and signed by all parties, the regulation expressly indicates when agreements

---

2. 8 AAC 45.160 AGREED SETTLEMENTS (b), (c), and (d) read as follows:

(b) All settlement agreements must be submitted in writing to the board, must be signed by all parties to the action and their attorneys or representatives, if any, and must be accompanied by form 07–6117.

(c) Every agreed settlement must conform strictly to the requirements of AS 23.30.012 and, in addition, must

(1) be accompanied by all medical reports in the parties' possession, except that, if a medical summary has been filed, only those medical reports not listed on the summary must accompany the agreed-upon settlement;

(2) include a written statement showing the employee's age and occupation on the date of injury, whether and when the employee has returned to work, and the nature of employment;

(3) report full information concerning the employee's wages or earning capacity;

(4) state in detail the parties' respective claims;

(5) state the attorney's fee arrangement between the employee or his beneficiaries and the attorney, including the total amount of fees to be paid;

(6) itemize in detail all compensation previously paid on the claim with specific dates, types, amounts, rates, and periods covered by all past payments; and

(7) contain other information the board will, in its discretion and from time to time, require.

(d) The board will inquire into the adequacy of all agreed settlements and will, in its discretion, set the matter for hearing to determine whether an agreement should be approved or disapproved. Agreed settlements between the employer and the employee or other persons claiming benefits under the Act are not final until approved by the board.

**646**

are considered final. "Agreed settlements between the employer and the employee ... are not final until approved by the board." 8 AAC 45.160(d). Thus, it is clear that enforceability of any agreement is conditioned upon Board approval.

■ Cole additionally argues that the Board erred in not waiving the requirement that all settlement agreements "must be signed by all parties to the action." In support of this contention Cole relies on the fact that the Board's own regulations allow waiver of procedural requirements if manifest injustice to a party would result from strict application of the regulation. Cole contends that the Board's decision omitting any reference to 8 AAC 45.195 which controls procedural waivers, and its decision to withhold approval of the Compromise and Release, resulted in "manifest injustice."[3]

Ketchikan Pulp contends that Cole's waiver arguments are misplaced because under 8 AAC 45.195 "waiver may not be employed merely to excuse a party from failing to comply with the requirements of law or to permit a party to disregard the requirements of law." Ketchikan Pulp quotes the following passage from the Board decision in the *Adamson* case in which the Board considered a similar issue:

The employer asks us to be "flexible" and, in essence, disregard the clear language of AS 23.30.012. We believe that request cannot properly be granted by an administrative agency attempting to apply the law as it exists. The employer's policy arguments are more properly the province of a court of competent jurisdiction. However, we specifically reject the argument that 8 AAC 45.195 (which permits us to waive procedural requirements of our regulations where manifest

injustice would otherwise result) gives us such "flexibility". 8 AAC 45.195 concludes "a waiver may not be employed merely to excuse a party for failing to comply with the requirements of law or to permit a party to disregard the requirements of law.

*Adamson v. University of Alaska,* AWCB Decision and Order 88–0066 (March 31, 1988). Ketchikan Pulp argues that even if the Board could waive the statutory requirements of AS 23.30.012, there is no manifest injustice here because Lorena received the TTD amount that survives Cole's death under the statutory scheme. "The additional amount she seeks here is in essence a windfall."

The Board refused to approve the Compromise and Release because it believed that it was not within its power to approve an agreement that departed from the form prescribed by 8 AAC 45.160(b). In this regard the Board stated:

Although it would be in Lorena Cole's best interest to do so, we regretfully conclude that we may not approve the C & R.

The statute, AS 23.30.012 provides that the C & R must be filed with us, in the form which we prescribe; "[o]therwise the agreement is void for any purpose." We have prescribed the form for C & Rs in our regulation 8 AAC 45.190(b). Our regulation clearly provides that C & Rs must be signed by both parties and their attorneys. Only Mr. Pallenberg signed the C & R.

However, 8 AAC 45.195 authorizes the Board to waive procedural requirements of its own regulations "if manifest injustice to a party would result from a strict application of the regulation." In its decision in

**3.** 8 AAC 45.195 reads:
**WAIVER OF PROCEDURES.** A procedural requirement in this chapter may be waived or modified by order of the board if manifest injustice to a party would result from a strict application of the regulation. However, a waiver may not be employed merely to excuse a party from failing to comply with the requirements of law or to permit a party to disregard the requirements of law.
Cole analogizes the Compromise and Release signature requirement to the Statute of Frauds,

in part because "under the Statute of Frauds, a contract which does not satisfy the requirements of AS 09.25.010, but which is otherwise valid is enforceable if the party against whom enforcement is sought admits, in pleadings or in any other action or proceeding the making of an agreement." AS 09.25.020(4). Cole submits that the Compromise and Release should be enforced in the instant case "because the employer has admitted ... the making of the agreement."

the instant case the Board failed to discuss the waiver provisions of 8 AAC 45.195 but did note that "it would be in Lorena Cole's best interest" to approve the Compromise and Release.

■ We construe 8 AAC 45.195 as empowering the Board, in circumstances such as are present in this record, to waive the signature requirement of subsection (b) of 8 AAC 45.160.[4] The Board withheld its approval of the Compromise and Release on the basis that it lacked the authority to waive the signature requirement. Therefore, the Board never engaged in the reasoned decision making that we are obligated to ensure under a rational basis review. We conclude that the Board's decision must be vacated and the matter remanded to the Board to redetermine whether it should approve the Compromise and Release in question in this case.

Upon remand the Board must determine whether or not the requirement of the parties' signatures should be waived. In the event the Board decides that it should waive the signature requirement pursuant to 8 AAC 45.195, the Board should further consider whether the terms of the Compromise and Release conform to the provisions of the Workers' Compensation Act. This reflects our belief that any conformity issue should first be presented to the Board for resolution.

The Board seemed to anticipate the conformity issue in its decision, stating:

> Due to employee's condition, he would have been entitled to unscheduled permanent partial disability compensation under AS 23.30.190(a)(2). Disability compensation may be awarded after the death of an employee, but surviving spouses and children of the deceased employee are not entitled to receive unscheduled permanent partial disability compensation payable to the employee.

The Board, however, did not rule on the issue of whether, assuming that the agreement was signed by the employee before his death but not presented for approval to the Board until after the employee's death, the terms of the agreement would conform to the provision of the Workers' Compensation statute. Because of this and because nonconformity was not briefed or argued on appeal, we believe that any conformity issue should first be presented to the Board for resolution.

**REVERSED** and **REMANDED** to the superior court with directions to remand to the Board to conduct further proceedings in conformity with this opinion.

---

**4.** At oral argument counsel for Ketchikan Pulp conceded that the Board possessed this authority under 8 AAC 45.160.