**CRAWFORD & COMPANY and National Union Fire Ins. Co. of Pittsburgh, Appellant,**

**v.**

**Penny T.R. BAKER–WITHROW, Appellee.**

**No. S–10540.**

Supreme Court of Alaska.

July 18, 2003.

Zane D. Wilson, Cook, Schuhmann & Groseclose, Inc., Fairbanks, for Appellant.

James M. Hackett, Law Office of James M. Hackett, Fairbanks, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

---

*OPINION*

MATTHEWS, Justice.

In 1990 Penny Baker–Withrow suffered an on-the-job injury that left her with post-traumatic stress disorder. Nine years later she began receiving Eye Movement Desensitization and Reprocessing therapy. Her former employer refused her claim for payment on the grounds that her medical provider failed to submit a timely treatment plan. We conclude that her employer is responsible for all treatments rendered after a treatment plan was submitted, plus any treatments rendered not more than fourteen days before submission of the treatment plan.

I.

While working for Crawford & Company, Penny Baker–Withrow was injured when an irate client hit her in the face with a coffee cup. From 1992 until 2000, Baker–Withrow was under the care of Dr. Robert Schultz for post-traumatic stress disorder (PTSD).

In June 1999 Dr. Schultz referred Baker–Withrow to Tima Priess for psychotherapy and Eye Movement Desensitization and Reprocessing (EMDR) therapy. Baker–Withrow saw Priess for an initial evaluation on August 8, 1999, and began treatment on September 21, 1999. She received six weekly EMDR treatments between September and early December 1999.[1]

In February 2000 Crawford & Co. declined to pay for these treatments; it claimed that a timely treatment plan had not been submitted as required by AS 23.30.095(c) and that the treatments violated the Alaska Workers' Compensation Board's frequency standards. The dispute was brought before the board.

The board found that Priess failed to timely submit a treatment plan. However, the board noted that "the record suggests that as soon as Priess learned the process and associated requirements, she complied." In the interest of justice the board found that Priess's failure to timely provide a written treatment plan should be excused, citing the authority of 8 Alaska Administrative Code (AAC) 45.195. The board found that EMDR "is becoming an accepted form of treatment and it can be effective" and "the employee is making progress that had not been achieved with the former treatments."

The board then awarded payment of past EMDR treatments "plus an additional 20 treatments at a frequency to be approved by [Baker–Withrow's physician]." The superior court affirmed this award. Crawford & Co. appeals, arguing that the board cannot approve treatments in excess of the frequency standards when the medical provider fails to submit a timely treatment plan.

II.

The statutory section concerning treatment plans is AS 23.30.095(c).[2] The first sentence of subsection .095(c) requires a health care provider who furnishes continu-

---

1. Through December 28, 2000, when the Alaska Workers' Compensation Board issued its decision in this case, Baker–Withrow had at least ten more EMDR treatments. She may have had more; the record is unclear on this point.

2. AS 23.30.095(c) provides:

   A claim for medical or surgical treatment, or treatment requiring continuing and multiple treatments of a similar nature is not valid and enforceable against the employer unless, within 14 days following treatment, the physician or health care provider giving the treatment or the employee receiving it furnishes to the employer and the board notice of the injury and treatment, preferably on a form prescribed by the board. The board shall, however, excuse the failure to furnish notice within 14 days when it finds it to be in the interest of justice to do so, and it may, upon application by a party in interest, make an award for the reasonable value of the medical or surgical treatment so obtained by the employee. When a claim is made for a course of treatment requiring continuing and multiple treatments of a similar nature, in addition to the notice, the physician or health care provider shall furnish a written treatment plan if the course of treatment will require more frequent outpatient visits than the standard treatment frequency for the nature and degree of the injury and the type of treatments. The treatment plan shall be furnished to the employee and the employer within 14 days after treatment begins. The treatment plan must include objectives, modalities, frequency of treatments, and reasons for the frequency of treatments. If the treatment plan is not furnished as required under this subsection, neither the employer nor the employee may be required to pay for treatments that exceed the frequency standard. The board shall adopt regulations establishing standards for frequency of treatment.

ing or multiple treatments of a similar nature to give notice of such treatment to the employer and the board within fourteen days following treatment. If notice is not given, the employee's claim for the treatments is not valid and enforceable against the employer. But, according to the second sentence, the board may excuse the failure to furnish notice in the interest of justice. The third sentence of subsection .095(c) introduces the concept of a treatment plan. In addition to the notice of treatment called for by the first sentence, the third sentence requires that the health care provider furnish a written treatment plan if the "course of treatment will require more frequent outpatient visits than the standard treatment frequency for the nature and degree of the injury and the type of treatments." According to the fourth sentence, the treatment plan must be furnished "within 14 days after treatment begins" to the employee and the employer. The fifth sentence describes the contents of a treatment plan. The sixth sentence describes the consequences of not furnishing a treatment plan. In such case, neither the employer nor the employee may be required to pay for treatments that exceed the frequency standard. The seventh, and last, sentence of subsection (c) provides that the board shall adopt regulations establishing standards for frequency of treatment.[3]

Based on the structure of the statute it seems apparent that while notice of treatment within fourteen days following treatment is waivable in the interest of justice, because the second sentence of the subsection so provides, failure to furnish a treat-

ment plan within the same period is not waivable because there is no similar grant of authority to waive the furnishing of a treatment plan. We so concluded in *Grove v. Alaska Construction & Erectors.*[4]

In excusing Priess's failure to timely furnish a written treatment plan the board relied on 8 AAC 45.195, which states that "[a] procedural requirement in this chapter may be waived or modified by order of the board if manifest injustice to a party would result from a strict application of the regulation." But this regulation only authorizes the board to waive the requirements of other regulations, not statutory requirements.[5] As furnishing the plan within fourteen days is a statutory requirement, the board had no authority to waive it.

What remains is a question concerning the consequences of furnishing a treatment plan more than fourteen days after treatment begins. Does the fact that a plan is submitted late mean that all past and future treatments in excess of frequency standards are barred or are only past treatments—those occurring more than fourteen days before the plan is furnished—barred? We believe that only past treatments should be barred, for the following reasons.

First, construing the statute to bar only treatments given before a plan is furnished is consistent with the evident purposes of the statute. One purpose is to protect both employers and employees from possibly unscrupulous medical providers who provide needlessly frequent therapy sessions.[6] Relatedly,

---

**3.** The board has frequency standards. Although the third sentence of AS 23.30.095(c) implies that frequency standards will differ according to the nature and degree of the injury and the type of treatment, the board's frequency regulations apply to all injuries requiring continuing and multiple treatments no matter what the nature of the injury or the type of treatment. The standards provide that treatments "may not exceed more than three treatments per week for the first month, two treatments per week for the second and third months, one treatment per week for the fourth and fifth months, and one treatment per month for the sixth through twelfth months." 8 AAC 45.082(f). The regulation does not specify whether the enumerated months are months following the injury or months following the commencement of treatment. If the "first month" refers to the first month after the particular treat-

ment begins it may be that few, if any, of Baker–Withrow's treatments furnished before Crawford & Co.'s February 2000 objection actually exceed the frequency standards. But the parties do not discuss this ambiguity and we make no ruling concerning it.

**4.** 948 P.2d 454, 457 (Alaska 1997) ("The Board cannot allow more frequent treatment without the submission of a treatment plan...").

**5.** "A procedural requirement in this chapter may be waived or modified...." 8 AAC 45.195; *see also Cole v. Ketchikan Pulp Co.,* 850 P.2d 642, 646–47 (Alaska 1993).

**6.** *See Chiropractors for Justice v. State,* 895 P.2d 962, 966 (Alaska 1995).

another purpose of requiring that a plan be furnished appears to be to give employers an opportunity to object to overly frequent therapy sessions before a large bill accumulates. These objectives are fully met by construing the bar on overly frequent treatments to apply only to pre-plan treatments and they are not undercut by permitting payment for treatments rendered after a plan is furnished.

Further, it would be unduly harsh to ban all post-plan treatments in excess of standards no matter how much the treatments are needed merely because a treatment plan is provided late. In addition, the statutory term "course of treatment" has no fixed meaning that could support a bar on all future treatments.[7] If treatments were to stop for a time and then begin again, whether recommencement marked the continuation of an old course of treatment or the beginning of a new one would be debatable and difficult to resolve. Instead of adopting a construction that invites controversies of this nature and leads to harsh results not justified by the purposes of the statute, we conclude that late submission of a treatment plan should bar only past overly frequent treatments.

In the present case the board found that Priess failed to timely submit a treatment plan, but the board implied that when Priess learned of the need for a treatment plan she furnished one. But the board did not specify the date on which a treatment plan, or its equivalent in terms of information, was furnished. On remand, this date should be determined and those therapeutic sessions in excess of the frequency standards that took place more than fourteen days before this date should be excluded. Sessions after this date were properly ruled to be the responsibility of the employer.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings.