Sang SUH, Appellant,

v.

PINGO CORPORATION, Employer, Pacific Marine Insurance Company, Mukluk Freight and Alaska Pacific Assurance Co./INA, Appellees.

Joseph JERKOVICH, Appellant,

v.

PINGO CORPORATION, Employer, Pacific Marine Insurance Company, Mukluk Freight and Alaska Pacific Assurance Co./INA, Appellees.

Nos. S–1247, S–1259, 3188.

Supreme Court of Alaska.

June 9, 1987.

William M. Erwin, Anchorage, for appellant Suh.

Peter A. Galbraith, Anchorage, for appellant Jerkovich.

James E. Hutchins, Faulkner, Banfield, Doogan & Holmes, Anchorage, for appellees.

Chancy Croft, Anchorage, as amicus curiae.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION ON REHEARING

MOORE, Justice.

In *Cesar v. Alaska Workmen's Compensation Board*, 383 P.2d 805 (Alaska 1963), we determined the manner by which scheduled permanent partial disability awards were to be computed under AS 23.30.190. We reconsidered that determination in *Providence Washington Insurance Co. v. Grant*, 693 P.2d 872 (Alaska 1985), and concluded that *Cesar* was erroneous. We overruled *Cesar*, with the result that awards for permanent partial disability would be increased in some cases. The question now on appeal is the extent to which *Grant* applies retroactively. We hold that *Grant* applies retroactively to cases arising from disabilities sustained before January 25, 1985, the date of our decision in *Grant*, when the following circumstances exist: (1) the Workers' Compensation Board issued a PPD compensation award or PPD compensation commenced, whichever occurred earlier, on or after that date; or (2) a PPD compensation order was pending on appeal on that date, provided that the worker argued at the hearing before the Board that *Cesar* misconstrued AS 23.30.190 and preserved the point on appeal. Accordingly, the trial court is affirmed.

I.

Appellant Suh sustained a work-related injury in 1983. The injury resulted in a 20% PPD rating in 1984. Suh asserted a claim for PPD benefits based on that rating, and his employer and its insurer did not controvert the claim. In 1984, the insurer paid Suh a lump sum constituting final settlement of his PPD claim. The amount of the payment had been calculated in accordance with *Cesar*. In 1985, after we handed down our *Grant* decision, Suh sued for declaratory judgment in superior court, arguing that *Grant*'s interpretation of AS 23.30.190 should apply retroactively to him and to all those workers whose claims for adjustment have not been barred by the statute of limitations.

Appellant Jerkovich sustained an injury in 1982 which resulted in a 20% PPD rating in 1984. His employer's insurer calculated PPD benefits based on *Cesar* and issued a lump sum compensation check which Jerkovich cashed. Jerkovich had advised the insurer that he objected to its computation of his benefits, and contends that he cashed the check knowing that this court was reconsidering its *Cesar* holding. However, he did not request a hearing before the Board. He asserts that he did not intend "to waive his right to claim that he was entitled to more" PPD benefits than he already had been paid.[1] Jerkovich intervened in Suh's suit for declaratory judgment.

---

1. The record does not indicate that Jerkovich ever contested ALPAC's proposed payment before the Board on the grounds that *Cesar* had incorrectly construed AS 23.30.190.

The trial court entered summary judgment against Suh and Jerkovich, holding that the *Grant* interpretation of AS 23.30.-190 applies prospectively only. We affirm the result below but emphasize that *Grant* is subject to a limited retroactive application in certain cases.

## II.

There is no constitutional mandate, federal or state, requiring civil decisions to be applied either retroactively or prospectively. *Commercial Fisheries Entry Commission v. Byayuk*, 684 P.2d 114, 117 (Alaska 1984). The determination whether to give retroactive effect to new decisional law is made *ad hoc*, on the basis of the practical and equitable considerations of each case. *Id.* As we have observed before, any retroactivity decision will "involve an arbitrary classification which is not particularly defensible except in terms of its impact." *Judd v. State*, 482 P.2d 273, 278 (Alaska 1971). The practical and equitable impact of a retroactive change in workers' compensation law obviously depends upon the unique system of rights, obligations, and procedures set out in the Workers' Compensation Act. We have evaluated the retroactive application of *Grant* with these unique features in mind.

We explained our analytical approach to retroactivity problems in *Byayuk, supra.* In that case, we described four factors which we weigh in deciding the extent of retroactive application, if any, to be given to new decisions:

(1) whether the holding either overrules prior law or decides an issue of first impression whose resolution was not foreshadowed;

(2) whether the purpose and intended effect of the new rule of law is best accomplished by a retroactive or a prospective application;

(3) the extent of reasonable reliance upon the old rule of law; and

(4) the effect on the administration of justice of a retroactive application of the new rule of law.

*Byayuk*, 684 P.2d at 117.

There is no question that *Grant* meets the first factor's "threshold" test permitting either a prospective or retroactive application, since the decision overrules prior law. The second factor, the purpose of the new holding, weighs in favor of a retroactive application. The remaining two factors, reliance on *Cesar* and administrative inconvenience, weigh in the opposite direction. After balancing these factors, we conclude that *Grant* requires a retroactive application, but that its retroactivity must be carefully limited.

## A. *The purpose of our holding in Grant*

The purpose of a new decision is the single most important criterion in resolving the retroactivity question. *Byayuk*, 684 P.2d at 118. *Grant* was intended to correct an earlier misconstruction of the Workers' Compensation Act and thereby to conform the treatment of disabled workers to the provisions of the Act. The purposes of *Grant* are intimately related to the purposes of the Act itself.

The primary goal of the Workers' Compensation Act is to provide workers with modest but certain compensation for work-related injuries, regardless of fault. *Arctic Structures, Inc. v. Wedmore*, 605 P.2d 426, 438–40 (Alaska 1979). The compensation scheme embodied in the Act is the injured worker's exclusive remedy against his employer. AS 23.30.055. The exclusiveness of the remedy reflects a *quid pro quo* exchange of rights and liabilities for both workers and employers. Workers gain an assured remedy without the burden of proving fault, but lose the right to sue their employers in tort. Employers gain relief from large tort damage awards and enjoy an absolute limit on liability under the Act, but are liable without fault for injuries covered under the Act. 2A Larson, Workers' Compensation Law § 65.11, 12–1–6 (1985). This *quid pro quo* arrangement underscores a secondary goal of the Act: to be fair to employers as well as to workers.

Our *Grant* decision is directed toward ensuring the full compensation of injured workers. Since the Act endeavors to com-

pensate *all* injured workers, *Grant*'s purpose can best be met through retroactive application. But, at the same time, the Act's secondary goal of fairness to employers prevents us from requiring complete retroactivity if to do so would impose an unfair burden on employers and their insurers.

### B. *The extent of reliance on Cesar*

For twenty-two years, our holding in *Cesar* helped define workers' compensation liability exposure for Alaska employers. We have no doubt that employers and their insurers relied on *Cesar* during those twenty-two years, and that their reliance was entirely reasonable.

But our inquiry is not simply whether employers and insurers relied on an overturned rule of law. Our inquiry is whether the *extent* of their reliance renders retroactive application of a new holding unfair.

The extent of employers' and insurers' reliance on *Cesar* is not measured by the total amount of new liability created by *Grant*. Rather, their reliance is measured by the extent to which they are unprepared for the new liability. Insurers' reliance on *Cesar* is the amount by which the premiums they actually collected fell short of the premiums they would have collected if they had known *Grant* would apply. Similarly, self-insured employers' reliance is the amount by which the compensation funds they actually amassed are less than the funds they would have amassed under *Grant*.

Evidence in the record tending to establish the extent of reliance on *Cesar* is scanty at best. Donald Koch, the chief of the market surveillance section of the Division of Insurance, Alaska Department of Commerce and Economic Development, testified in a deposition that *Grant* would double benefit levels for scheduled PPDs; that PPDs, both scheduled and unscheduled, constituted 45% of "loss;" and that loss constituted 72% of premiums. But Koch did not know the ratio of scheduled to unscheduled PPDs, and was unable to estimate how much premiums would rise under *Grant*.

According to Koch, workers' compensation insurance rates originate with an industry-sponsored national rating organization. The organization develops rate proposals based on its highly sophisticated actuarial analysis of workers' compensation liability risks. The proposed rates are then reviewed by a committee of principal insurers doing business in Alaska, and submitted to the State Division of Insurance for approval.

One risk inherent in any insurance transaction is that laws establishing liability may change. Indeed, appellees concede in their brief that one factor in setting workers' compensation insurance rates is the risk that liability might increase in the future for a variety of reasons, including "the computational change effected by the overruling of *Cesar* by *Grant.*" Thus the risk undertaken is accounted for in the rate charged.

We agree with appellees that it would be unfair to make insurers and self-insured employers bear the huge burden of unanticipated liability that would probably be generated if *Grant* were applied retroactively for twenty-two years. But appellees have not convinced us that adopting a rule of limited retroactivity would impose on insurers and employers a burden that is outside the scope of the risk they assumed.

### C. *Administrative Burden*

The extent to which administrative process will be burdened by a retroactive application of *Grant* depends on the degree of retroactivity we adopt. A completely retroactive application would require the reopening of compensation awards made as long as twenty-two years ago, and would result in large numbers of new claims for adjustment in compensation. A limited retroactive application poses a lesser administrative burden.

Although administrative inconvenience alone would not justify holding against complete retroactivity, this factor buttresses our conclusion based on considerations of fairness to insurers and employers that a limited retroactive application of *Grant* is

preferable to a completely retroactive application.

### III.

After balancing the four *Byayuk* factors, we conclude that a limited retroactive application of *Grant* is most equitable. But in fashioning a particular rule that will be both workable and fair, we have looked beyond *Byayuk*'s general equitable principles to the practical considerations raised by workers' compensation procedure.

Under the Workers' Compensation Act, a hearing before the Workers' Compensation Board need not precede a disabled worker's receipt of benefits. AS 23.30.155(a). If an employer does not controvert a worker's right to compensation, compensation is due within 14 days, without a hearing. AS 23.30.155(b). The employer may compensate for PPDs either in installment payments or in a lump sum. AS 23.30.190(a)(20). Installment payments are due every 14 days (AS 23.30.155(b)) and may continue for years. If the worker later becomes dissatisfied with the amount of compensation he is receiving, he may file a claim for adjustment with the Board. Only then does the Board hold a hearing and issue a compensation order which may be appealed to the superior court. AS 23.30.105(a); 23.30.110.

Alternatively, if the employer controverts the worker's claim for compensation, the worker must file a claim (AS 23.30.-105(a)) and request a hearing before the Board. AS 23.30.110(c). Compensation does not begin until the Board has held a hearing and issued a compensation order. AS 23.30.155(a); 23.30.110(c).

The statute of limitations governing requests for hearings is critically affected by the employer's choice of whether or not to controvert the worker's right to compensation. If the employer chooses to controvert, the worker generally must file a claim and request a hearing within two years after gaining knowledge of his disability. If the employer does not controvert the claim, the worker may file a claim for adjustment at any time until two years after the date of his last payment. AS 23.30.105(a). By then, the injury may be many years old.

Because the time gap between injury and hearing is potentially so wide under the Workers' Compensation Act, we decline to make *Grant* retroactively applicable to all cases in which a hearing follows the date of the *Grant* decision. Although that approach is eminently sensible in other contexts,[2] we are concerned that in the workers' compensation context, such a rule would result in a degree of retroactivity that would be unfairly burdensome to employers.

Under such a rule, *Grant* would apply to cases involving recent pre-*Grant* injuries for which PPD compensation had not begun by the date of the decision. But *Grant* would also apply to cases involving injuries many years old, in which an employer had not initially controverted the worker's right to PPD compensation and the worker had filed a claim for adjustment and request for hearing only after receiving a long series of installment payments. Fairness to employers permits a retroactivity rule that reaches the former, but not the latter, group of cases.

We are concerned, too, that a rule focusing on the date of hearing would result in highly disparate treatment of similarly situated workers. Workers who suffer the same injury at the same time face different statutes of limitations for requesting hearings depending on whether their employers initially controvert their claims for PPD compensation. To allow some workers to have their compensation for pre-*Grant* injuries calculated under *Grant* but to disallow oth-

**2.** For example, when we rejected the doctrine of contributory negligence in favor of comparative negligence in *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975), we made the new rule retroactively applicable to all cases "in the pipeline." *Kaatz* stated that the new comparative negligence regime was to apply a) in the retrial of the *Kaatz* case itself; b) in any trial beginning after the date of the *Kaatz* opinion, regardless of when the cause of action arose; c) in any case pending on direct appeal when the *Kaatz* opinion was issued, provided that the plaintiff had asserted comparative negligence at trial and had preserved the point as a ground for appeal; and d) in any trial in progress on the date of the *Kaatz* opinion. 540 P.2d at 1050.

ers simply because of the procedural posture their employers took immediately after the injury would be arbitrary and unfair.

■ For these reasons, we adopt a somewhat different rule of limited retroactivity. Instead of focusing on the date of hearing, we focus on the earlier of two dates: the issuing of a PPD compensation award and the commencement of PPD compensation payments. We hold that *Grant* applies whenever the earlier of these dates occurs on or after the date of the *Grant* decision regardless of the date of disability. In addition, we hold that *Grant* applies to cases in which an appeal from a compensation order was pending on the date of the *Grant* decision, provided that the worker had argued at the hearing that *Cesar* misconstrued AS 23.30.190 and had preserved the point as a ground for appeal.

This rule differentiates among workers and employers on the basis of procedural differences, as any limited retroactivity rule must. But we are satisfied that this rule is equitable from the perspective of both workers and employers. Subject to the exception for pending appeals, the *Grant* holding applies only to pre-*Grant* injuries for which PPD compensation has not yet begun. Workers who have been forced to wait for their PPD benefits until after the date of *Grant* are compensated at the higher post-*Grant* level; workers who have been compensated promptly for pre-*Grant* permanent disabilities are not. Employers who had begun payment before *Grant* are assured of the lower liability under pre-*Grant* law; employers who have delayed payment are not. Since the rule precludes the retroactive use of *Grant* in hearings occurring after the worker has received a series of installment payments, it avoids the problem of applying *Grant* to disabilities sustained years ago.

Because its retroactive effect is carefully limited, this rule does not unreasonably burden employers and their insurers. Because it distinguishes between workers and employers on the basis of when compensation actually began rather than on when a hearing was held, it is fair in application.

## IV.

■ Appellees contend that a retroactive application of *Grant* violates the takings clauses of the U.S. and Alaska constitutions. This contention lacks merit. The constitutionality of retroactive provisions in workers' compensation and similar statutes is well established. *See, e.g., American Stevedores, Inc. v. Salzano*, 538 F.2d 933, 937 (2d Cir.1976) (holding that amendments to the Longshoremen's and Harbor Workers' Compensation Act which retroactively increased compensation payable for partial total disabilities and death did not violate the fifth amendment of the U.S. Constitution); *National Independent Coal Operator's Ass'n v. Brennan*, 372 F.Supp. 16 (D.D.C.) (three-judge court), *aff'd mem.*, 419 U.S. 955, 95 S.Ct. 216, 42 L.Ed.2d 172 (1974), *reh'g denied*, 419 U.S. 1132, 95 S.Ct. 818, 42 L.Ed.2d 831 (1975). The constitutional issue presented here is no different.

## V.

Because both appellants received compensation for their permanent partial disabilities prior to the date of our *Grant* decision, and because neither argued before the Board that *Cesar* misconstrued AS 23.30.190, neither comes within the terms of the retroactivity rule we now adopt. Therefore, the superior court is AFFIRMED.

MATTHEWS, Justice, joined by RABINOWITZ, Chief Justice, dissenting.

The normal rule of retroactivity provides any litigant or prospective litigant with the benefit of a new court ruling so long as the point is timely raised.[1]

---

**1.** The timeliness requirement can be illustrated by two of our cases, *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975), and *Lawrence v. Lawrence*, 718 P.2d 142 (Alaska 1986). In *Kaatz*, we overruled the doctrine that contributory negligence is a complete bar to a plaintiff's claim in favor of a system of comparative negligence. We

made the new system retroactively applicable to all cases in which the issue could be timely raised, namely: (a) in the retrial of *Kaatz* itself; (b) in any trial beginning after the date of the *Kaatz* opinion, regardless of when the cause of action arose; (c) in any case pending on direct appeal when the *Kaatz* opinion was issued, so

Concerning civil cases, this court has held that retroactivity is the rule and prospectivity is the exception. *See Plumley v. Hale,* 594 P.2d 497, 502 (Alaska 1979) (absent special circumstances, a new rule is binding in the case before the court and in all subsequent cases in which the point in question is raised regardless of when facts leading to the case occurred).

*CFEC v. Byayuk,* 684 P.2d 114, 117 (Alaska 1984).

The United States Supreme Court has endorsed a similar view. In *Griffith v. Kentucky,* —— U.S. ——, ——, 107 S.Ct. 708, 716, 93 L.Ed.2d 649, 661 (1987), the Court held that a new decision concerning constitutional law in the context of a criminal case should be retroactively applied to "all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." The court explained that

> it is the nature of judicial review that precludes us from "[s]imply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule."

*Id.,* —— U.S. at ——, 107 S.Ct. at 713, 93 L.Ed.2d at 658, citing *Mackey v. United States,* 401 U.S. 667, 679, 91 S.Ct. 1160, 1173, 28 L.Ed.2d 404, 412–13 (1971) (Harlan, J., concurring in judgments).

There is no reason to deviate from the normal rule of retroactivity in the present case. Any claim pending on direct review or any case that was not final at the time that *Grant* was rendered should have the benefit of our holding in *Grant.*

The insurance company's reliance interest does not mandate a different result. Full retroactive application of *Grant* would involve a measure of unfairness to workers' compensation insurers who have set their rates based on the *Cesar* approach. This, however, is a problem which is always encountered when there is a change in the law brought about by judicial decision. An insurer's reliance interest is insufficient to compel prospective application of a change in the law unless the insurer presents a compelling case of grave financial consequences.[2] No such showing has been presented in this case.

Professor Keeton's rationale for retrospective overruling in civil cases is persuasive:

> It is sometimes suggested that retrospective overruling in tort cases is unfair not only to the uninsured institutions but also to the liability insurers whose rates have been set in reliance on precedent and to the group of policyholders who will pay higher than the compensatory premiums in order to make up for the losses the insurers suffered by collecting inadequate premiums over the period to

---

long as the plaintiff had asserted his entitlement to comparative negligence at trial and had preserved the point as a point on appeal; and (d) in any trial in progress on the date of the *Kaatz* opinion. 540 P.2d at 1050.

By contrast, in *Lawrence,* a litigant was denied the retroactive benefit of a prior court ruling, *Dowling v. Dowling,* 679 P.2d 480 (Alaska 1984), which in turn overruled *Hinchey v. Hinchey,* 625 P.2d 297 (Alaska 1981). *Dowling* interpreted Alaska's child support statute to authorize the mandatory payment of child support for minor children only, contrary to the earlier *Hinchey* case. The applicant in *Lawrence* was required to pay post-majority child support under a decree issued three months before the *Dowling* decision. His efforts to change the decree based on *Dowling* were unsuccessful because he did not raise the post-majority support issue within the 30–day period allowed for tak-

ing an appeal. He therefore was precluded from raising the point in a Civil Rule 60(b)(1) motion to modify. 718 P.2d at 145–46.

**2.** *Compare EEOC v. Texas Industries,* 782 F.2d 547, 552 (5th Cir.1986) (finding no substantial inequity where fiscal soundness of health insurance plan would not be jeopardized by retroactive relief where the overruling law "should have been seen as, at the least, a significant realistic possibility"), *with Los Angeles Dep't of Water & Power v. Manhart,* 435 U.S. 702, 719–20, 98 S.Ct. 1370, 1380–81, 55 L.Ed.2d 657, 672–74 (1978) (noting possible devastating effect of retroactive relief on fifty million Americans), *and Arizona Governing Comm. v. Norris,* 463 U.S. 1073, 1105–07, 103 S.Ct. 3492, 3510–11, 77 L.Ed.2d 1236, 1262–63 (1983) (noting devastating results of holding employers liable retroactively).

which the overruled decision retrospectively applies. But the implications of this view make it wholly unacceptable. First, its general acceptance would in effect disable courts from creative decisions in accident law. Second, *the need for protection of the reliance interest is much less significant in this context than in the context of uninsured institutions, since the risk of disastrous impact upon a particular insurer is so much less serious. Some guarantee of this appraisal appears in the fact that ordinarily it is impossible to trace the impact of particular legal doctrines upon liability insurance rates.* Also, even where the doctrinal change is one that might promptly affect rates, as in the case of overruling an immunity, a contrast between the reliance of an insurer and the reliance of an institution in not insuring remains. A single heavy judgment against an uninsured hospital would be more likely to spell catastrophe than the number of such judgments that would fall on a single insurer. Moreover, there is a good prospect of the insurer's spreading the loss among a group that comes fairly close to corresponding to the group of policyholders who might appropriately have been required to pay higher premiums if the overruling decision had been forecast.

Keeton, *Creative Continuity in the Law of Torts,* 75 Harv.L.Rev. 463, 492–93 (1962) (emphasis added, footnote omitted).

Moreover, any unfairness to the insurer, which is compelled to pay benefits that were not foreseen in the insurance rate structure, is at least equally balanced by the unfairness which each claimant is forced to suffer when he does not receive the benefits which the law, properly construed, affords him, and which the legislature intended to provide. Every dollar saved by an insurance carrier under an improper construction of the law is a dollar taken from the legal entitlement of a claimant. We have previously said that the Workers' Compensation Act should be liberally construed in favor of claimants. *Hood v. State,* 574 P.2d 811, 813 (Alaska 1978). When the equities are evenly divided this rule of construction requires a decision in favor of the claimants.

For these reasons the judgment of the superior court should be reversed.