*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MUNICIPALITY OF ANCHORAGE, | ) | |
| | ) | Supreme Court No. S-15546 |
| Appellant, | ) | |
| | ) | Alaska Workers' Compensation |
| v. | ) | Appeals Commission No. 13-008 |
| | ) | |
| LEE O. STENSETH, | ) | O P I N I O N |
| | ) | |
| Appellee. | ) | No. 7064 – November 25, 2015 |
| _____ | ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission, Laurence Keyes, Commission Chair.

Appearances: Shelby L. Nuenke-Davison, Anchorage, for Appellant. Robert A. Rehbock, Rehbock & Rehbock, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

## I. INTRODUCTION

The Alaska Workers' Compensation Board dismissed an employer's fraud petition after deciding that the parties had reached an enforceable settlement. The employer appealed the dismissal, arguing that any settlement of its fraud petition was void because the settlement did not meet the requirements set out in the Alaska Workers' Compensation Act and the Board's regulations. The Alaska Workers' Compensation Appeals Commission affirmed the Board's decision. The employer appeals, arguing that

the Commission's interpretation of the statute is incorrect and that the Commission incorrectly interpreted our decisions about estoppel. We affirm the Commission's decision.

## II.    FACTS AND PROCEEDINGS

Lee Stenseth was injured at work many years ago. He and his employer, the Municipality of Anchorage, entered into a compromise and release agreement (C&R) in August 1996 in which Stenseth waived all future benefits except medical benefits in exchange for $37,000. Stenseth retired from the Municipality in 1996, but he continued to receive medical benefits for his work-related injury, including narcotic pain medication.

In late 2006 Stenseth was charged with multiple felonies related to selling or delivering narcotics that he had acquired, some from forged prescriptions modeled on the prescriptions for his work-related injury. Stenseth pleaded guilty to a number of felonies and served time in jail; he was released in June 2010.

In April 2012 the Municipality filed a petition under AS 23.30.250(b)[1] alleging that Stenseth had obtained workers' compensation benefits by making a false statement or misrepresentation for the purpose of obtaining benefits. It asked for an order reimbursing it for "all benefits, costs and attorney's fees paid as a result of the misrepresentations." Stenseth denied that he had made any misrepresentations for the purpose of obtaining benefits.

---

[1]    AS 23.30.250(b) provides in part, "If the board, after a hearing, finds that a person has obtained . . . medical treatment . . . by knowingly making a false or misleading statement or representation for the purpose of obtaining that benefit, the board shall order that person to make full reimbursement of the cost of all benefits obtained."

The parties agreed to mediate their dispute, with an Alaska Workers' Compensation Board hearing officer, William Soule, acting as the mediator. The mediation occurred in early November 2012. The letter from hearing officer Soule confirming the mediation asked that the parties "come with authority to settle, or a way to obtain adequate authority, during normal[] Alaska business hours." At the time the Municipality was represented by attorney Trena Heikes; Law Henderson, the Municipality's workers' compensation administrator, did not attend the mediation in person but participated by telephone. Henderson later testified that Heikes called him periodically throughout the day to discuss the negotiations. Both Heikes and Henderson thought they had authority to settle the case.

The parties reached some type of agreement at the mediation. The following week Heikes wrote to attorney Robert Rehbock, who was representing Stenseth, to "summarize the settlement reached at mediation last Friday." Heikes summarized the agreement as follows:

> MOA has agreed to accept either $30,000.00 cash to be paid within 90 days from today or a Promissory Note for $40,000.00 secured by a Confession of Judgment Without Action and a Deed of Trust on the home . . . in Wasilla, Alaska in exchange for its waiver of over $125,000.00 it claims is due under AS 23.30.250(b). The note will be payable at $500.00 per month and will accrue interest at 3.5%. Mr. Stenseth is to commence these monthly payments immediately with the balance either in cash within 90 days or execute the Note, Confession of Judgment and have his daughter execute the Deed of Trust.

Heikes then memorialized a post-mediation exchange:

> I have since discussed the matter with Mr. Henderson today and spoken with you regarding that discussion. As I explained, Mr. Henderson prefers to either wait on the C&R until payment has been made OR make the agreement

voidable at MOA's option in the event of default . . . . You claim this changes the terms of the settlement. I am not so sure. Rather, MOA believes this merely is a way of moving forward in the manner in which I initially expressed: to wait to file the C&R until all payment was made.

She gave a deadline for a response.

Rehbock responded, essentially rejecting the Municipality's new proposal; he wrote, "We were and remain prepared to [compromise] on the original terms." He also said that he had been "directed to make a one-time further offer directly to the MOA, your principal[,] if you will allow your client to receive it." His letter did not contain the "further offer," but a letter from Heikes dated December 5 said:

> This will confirm MOA's response to your client's new settlement proposal . . . . I have tendered Mr. Stenseth's proposal to my client and, as I explained, have been advised MOA wishes to maintain the previous settlement amounts verbally agreed to by the parties at the November 9, 2012 mediation. Thus, in exchange for $30,000.00 in certified monies by February 22, 2013 (90 days from the November 13, 2012 letter of confirmation), MOA would execute any and all documents necessary for its full release of Mr. Stenseth from any further liability to MOA under AS 23.30.250.

Rehbock wrote and accepted the Municipality's offer on December 11, saying: "My client accepts your post mediation offer to pay $30,000.00 by latest February 22, 2013 in exchange for a complete release of all rights and claims against Mr. Stenseth arising of or in connection with AS 23.30.250." Rehbock also informed Heikes that Stenseth had "arranged for the funds" and that the funds were in Rehbock's

possession. Rehbock suggested a "tender in exchange for releases to be simultaneously filed with the Board, so to meet any requirement of AS 23.30.012."[2]

Heikes emailed Rehbock six days later, informing him of "an internal glitch," a "need to get higher ups to sign off." She then wrote, "Higher ups demand closure of narcotics. Under [the] circumstances that shouldn't be a problem, . . . right?" Rehbock responded in less than an hour, "No it is not ok. The offer was accepted." Rehbock tendered the funds, in the form of two cashier's checks, to the Municipality on or about December 18, 2012; the tender was refused.

The "glitch" to which Heikes referred was a misunderstanding about the limit of her and Henderson's settlement authority. Henderson later testified that the limit for settlement without approval was $50,000, but evidently neither Heikes nor Henderson understood the limit applied to forbearance. They thought they could settle as long as the amount set out in the agreement was $50,000 or less. Someone later corrected their misunderstanding.

Stenseth filed a petition with the Board on December 18, asking the Board to dismiss the Municipality's fraud petition because the Municipality had "breached [its]

---

² AS 23.30.012(a) provides:

> At any time after death, or after 30 days subsequent to the date of the injury, the employer and the employee . . . have the right to reach an agreement in regard to a claim for injury or death under this chapter, but a memorandum of the agreement in a form prescribed by the director shall be filed with the division. Otherwise the agreement is void for any purpose. Except as provided in (b) of this section, an agreement filed with the division discharges the liability of the employer for the compensation, notwithstanding the provisions of AS 23.30.130, 23.30.160, and 23.30.245, and is enforceable as a compensation order.

contract of settlement terms negotiated by the parties at the November 9, 2012 mediation." Several draft settlements were exchanged subsequent to Stenseth's petition, accompanied by emails between the attorneys. Stenseth took the position that the settlement he accepted on December 11 was binding on the parties unless they renegotiated. The parties exchanged some proposals and counter-proposals about several issues, including a release of narcotic-related treatment in exchange for an agreement by the Municipality to pay part of Stenseth's attorney's fees related to the dispute about the settlement's existence.[3] The Board held a hearing on Stenseth's petition in February 2013.[4]

The Board limited the February hearing to consideration of Stenseth's petition to dismiss the Municipality's fraud claim; it declined to consider the Municipality's petition, made orally at a prehearing conference, that the written evidence of settlement negotiations be excluded. In her opening statement, Heikes said that both she and Henderson thought they had authority to settle for the agreed-upon amount, but they did not in fact have authority. The Municipality argued that the settlement was void because it had not been submitted to the Board as required by AS 23.30.012. The hearing officer questioned both attorneys about the applicability of section .012.

Henderson and Stenseth were the only hearing witnesses.[5] Henderson agreed that he had authorized Heikes to write the letter memorializing the agreement reached through mediation; he said he thought the letter "was an offer" and that he

---

[3]     The parties had stipulated that Stenseth would pay his own attorney's fees.

[4]     A second mediation was attempted in January 2013.

[5]     Stenseth intended to call hearing officer/mediator Soule as a witness. The Municipality objected, and the Board Chair agreed that he could not be called as a witness.

intended to bind the Municipality when he authorized it. Henderson also testified that he authorized Heikes to write the letter in which the Municipality rejected Stenseth's post-mediation offer and said it wanted to return to the original agreement. Henderson agreed that he was aware Heikes could bind the Municipality and that nothing in the letter suggested she did not have that authority; he acknowledged that the letter did not "discuss authority." The parties ultimately agreed that the tender was made on December 18.

Henderson explained the basis of the misunderstanding about authority. The limit for settlement without approval from others was $50,000, but because he generally negotiated payments *to* others rather than *from* them, it did not occur to either him or Heikes that the limit applied to the amount the Municipality would forbear. They both thought they had authority to settle when they attended the November mediation because they evidently thought they could settle as long as the amount in the agreement was $50,000 or less, even if the Municipality was compromising a claim that it alleged exceeded $100,000. In answer to a question from Heikes about whether there had "been a settlement agreement in this case," Henderson answered, "Not that I know of."

Stenseth testified about his understanding of the negotiations as well as his understanding of and response to the Municipality's discovery requests. He was cross-examined about his criminal convictions; he testified that none of the charges was "directly related to workers' comp." He agreed that he had not signed a C&R in 2013 as he had in 1996. Stenseth answered questions from his attorney about negotiations that happened after the December 11, 2012 letter accepting the Municipality's settlement terms; according to Stenseth, he was willing to agree to some additional conditions but not others.

In closing Stenseth argued that settlement agreements are contracts, that he and the Municipality had entered into a valid contract to settle his case, and that the

Board should enforce the settlement. The Municipality argued that the settlement was void because it did not comply with AS 23.30.012 and that section .012 must apply because the Board's jurisdiction is limited to "claims."

Because a hearing on the Municipality's fraud petition was already scheduled for early March 2013, in late February the Board issued a "summary interim order" dismissing the Municipality's petition. The Board decided there was an enforceable contract. It noted that after 2005 Board approval was not required for all settlements and specifically was not required for settlements in which both parties were represented by Alaska attorneys. The Board determined it had the inherent equitable authority to enforce the contract and dismissed the Municipality's petition under AS 23.30.250(b).

In its final decision, the Board decided the parties had entered into a contract to settle the case in December 2012, finding the following: "Employer made an offer encompassing all the essential terms. Employee unequivocal[ly] accepted those terms. Employee's promise to pay and Employer's promise to forebear [sic] are consideration, and both parties' letters evince the intent to be bound." The Board decided the Municipality should be equitably estopped from denying the authority of its employees to settle the case on the terms set out in the December correspondence because there was no way Stenseth or his attorney could have known prior to accepting the offer that Henderson and Heikes had exceeded their authority.

With respect to the provisions of AS 23.30.012, the Board noted first that the statute had been amended in 2005 to dispense with Board approval of some settlements, including many settlements in which the parties are represented by attorneys

licensed to practice in Alaska.[6] The Board decided that in this case, the parties' settlement had been submitted to the Board through the filing of the December correspondence. Relying on one of its regulations, the Board then said that any regulatory requirements as to the required form of the agreement were procedural and could be waived if "manifest injustice" would otherwise result.[7] It waived the procedural requirements because the requirements "would have served no purpose" in the case and manifest injustice would result if the agreement were not enforced.

The Municipality appealed to the Commission, arguing that the Board erred in finding that there was a binding settlement between the parties. The Commission determined that (1) neither AS 23.30.012 nor the Board's settlement-agreement regulations applied to this case; (2) the Board's findings about the existence of a contract were supported by substantial evidence; (3) the Board properly applied equitable estoppel against the Municipality; and (4) there was no need to satisfy the technical requirements of the regulations. In deciding that AS 23.30.012 did not apply to this case, the Commission interpreted that statute as applying only to claims for injuries; because the fraud petition did not involve a claim for injury, the Commission reasoned that section .012 did not apply. The Municipality appeals.

---

[6] AS 23.30.012(b) ("The agreement shall be reviewed by a panel of the board if the claimant . . . is not represented by an attorney licensed to practice in this state, the beneficiary is a minor or incompetent, or the claimant is waiving future medical benefits.").

[7] *See* 8 Alaska Administrative Code (AAC) 45.195 (2011) (permitting Board to waive or modify a "procedural requirement in this chapter . . . if manifest injustice to a party would result from a strict application of the regulation").

## III. STANDARD OF REVIEW

In an appeal from the Alaska Workers' Compensation Appeals Commission, we review the Commission's decision rather than the Board's.[8] We apply our independent judgment to questions of law that do not involve agency expertise.[9] Interpretation of a statute is a question of law to which we apply our independent judgment, interpreting the statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose.[10] We do not mechanically apply the plain meaning rule but use a sliding scale approach to statutory interpretation, in which "the plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."[11]

We review questions of contract formation de novo when there are no factual disputes.[12] We independently review the Commission's conclusion that substantial evidence in the record supports the Board's factual findings by independently reviewing the record and the Board's findings.[13]

---

[8] *Shehata v. Salvation Army*, 225 P.3d 1106, 1113 (Alaska 2010) (citing *Barrington v. Alaska Commc'ns Sys. Grp., Inc.*, 198 P.3d 1122, 1125 (Alaska 2008)).

[9] *Id.*

[10] *State, Div. of Workers' Comp. v. Titan Enters., L.L.C.*, 338 P.3d 316, 320 (Alaska 2014) (citing *Monzulla v. Voorhees Concrete Cutting*, 254 P.3d 341, 345 (Alaska 2011)).

[11] *McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 721 (Alaska 2013) (internal quotation marks, alterations, and citations omitted).

[12] *Chilkoot Lumber Co. v. Rainbow Glacier Seafoods, Inc.*, 252 P.3d 1011, 1014 (Alaska 2011).

[13] *Shehata*, 225 P.3d at 1113.

Whether a regulation applies to a case is reviewed using the independent judgment standard.[14] We use different standards of review when interpreting regulations: we "typically interpret regulations with some deference to the agency's own interpretation," but when the agency that promulgated the regulation is not a party to the action and "has not otherwise offered an interpretation," we apply our independent judgment.[15] We review an agency's application of its regulation to the facts of a case "to determine whether the agency's decision was arbitrary, unreasonable, or an abuse of discretion."[16] "We will find an abuse of discretion when we are left with the definite and firm conviction that a mistake has been made."[17]

## IV.   DISCUSSION

A workers' compensation settlement is a contract.[18] Common law standards of contract formation and rescission apply to workers' compensation settlements to the extent these standards are not overridden by statute.[19] We have recognized a strong policy favoring settlements.[20] Here, the Municipality contends that AS 23.30.012 voids

---

[14]     *Garner v. State, Dep't of Health & Soc. Servs., Div. of Med. Assistance*, 63 P.3d 264, 267 (Alaska 2003).

[15]     *Tea ex rel. A.T.*, 278 P.3d 1262, 1263 (Alaska 2012).

[16]     *Burke v. Houston NANA, L.L.C.*, 222 P.3d 851, 857 (Alaska 2010).

[17]     *Id.*

[18]     *Seybert v. Cominco Alaska Exploration*, 182 P.3d 1079, 1093 (Alaska 2008) (citing *Williams v. Abood*, 53 P.3d 134, 139 (Alaska 2002)).

[19]     *Id.*

[20]     *See, e.g., Mullins v. Oates*, 179 P.3d 930, 937 (Alaska 2008) (quoting *Municipality of Anchorage v. Schneider*, 685 P.2d 94, 98 (Alaska 1984)); *see also Kazan v. Dough Boys, Inc.*, 201 P.3d 508, 514-15 (Alaska 2009) (setting out policy reasons that
(continued...)

any settlement the parties may have reached because the agreement was not submitted to the Board "in a form prescribed by the director," as that statutory section requires. It additionally contends that if a settlement contract was formed, the Board and Commission did not enforce the correct agreement because Stenseth abandoned the first settlement in favor of a second one. Finally, the Municipality contends that the Commission erred in its application of equitable estoppel because not all of the elements were met in this case.

### A. The Commission Correctly Determined That Substantial Evidence In The Record Supported The Board's Finding That The Parties Settled The Case In December 2012.

The Municipality does not directly question the Commission's decision that substantial evidence supported the Board's finding that a settlement contract was formed in the exchange of letters dated December 5 and 11. Instead, the Municipality argues that the Commission and the Board did not enforce the parties' most recent settlement. Whether a contract of settlement existed and what its terms encompassed is an underlying question that we address first.

We agree with the Commission that substantial evidence supported the Board's finding that the parties entered into a binding settlement, the terms of which were set out in the correspondence dated December 5 and 11, 2012 between Heikes and Rehbock. "The formation of an express contract requires an offer encompassing its essential terms, an unequivocal acceptance of the terms by the offeree, consideration[,] and an intent to be bound."[21] All four elements are present here. In its December 5

---

[20]    (...continued)
support enforcement of settlement agreements).

[21]    *Childs v. Kalgin Island Lodge*, 779 P.2d 310, 314 (Alaska 1989) (citing *Hall v. Add-Ventures, Ltd.*, 695 P.2d 1081, 1087 n.9 (Alaska 1985)).

letter, the Municipality made a written offer to Stenseth with the intent of binding the Municipality. The offer was specific and covered all essential terms. There was mutual consideration: Stenseth agreed to pay $30,000 to the Municipality, and the Municipality agreed to release Stenseth from liability under AS 23.30.250. Stenseth unequivocally accepted the offer in writing.

The Municipality does not appear to take the position, as it did before the Commission, that no agreement was ever reached. Instead, it contends that, after Stenseth filed his petition to enforce the first settlement, the parties abandoned the December settlement and entered into a second settlement. Although "a party can abrogate an existing contract by accepting a new contract in its place,"[22] there is no evidence that the parties here actually reached a new agreement. Pointing to an email from Heikes, the Municipality asserts that in January 2013, after Stenseth emailed a proposed settlement to the Municipality, "[t]he Municipality accepted the terms and advised that it was reviewing the document." But the email does not show "an unequivocal acceptance" of Stenseth's offer, as required for contract formation.[23] After noting that Stenseth had "substantially changed" the previous draft settlement, Heikes wrote, "MOA will not sign as written." She subsequently sent another draft settlement, which Stenseth rejected. The parties attended a second mediation in late January, which included a discussion of a further exchange of consideration. Continuing to negotiate, absent a new agreement, does not abrogate an existing settlement contract.[24]

---

[22] *Chilkoot Lumber Co. v. Rainbow Glacier Seafoods, Inc.*, 252 P.3d 1011, 1016 (Alaska 2011) (citing RESTATEMENT (SECOND) OF CONTRACTS § 279 (1981)).

[23] *Childs*, 779 P.2d at 314 (citing *Hall*, 695 P.2d at 1087 n.9).

[24] *Chilkoot Lumber Co.*, 252 P.3d at 1016.

The Municipality argues that the continuing negotiations between the attorneys after Stenseth filed his petition to dismiss undercut the notion that the parties intended to be bound by the agreement set out in the earlier letters. But this argument ignores the fact that Stenseth had filed a new petition; resolving that dispute would provide both parties a reason for continuing to negotiate. There is nothing inconsistent in trying to negotiate an agreement on the new petition while continuing to assert that the Municipality was bound by the settlement created when Stenseth accepted the Municipality's December 5 offer of settlement. The factual record does not support the Municipality's assertion that a later settlement replaced the first.

## B.     The Commission Correctly Determined That AS 23.30.012 Did Not Apply To This Settlement.

The Municipality argues that the Commission reversed longstanding law and practice in deciding that AS 23.30.012 did not apply to void the settlement agreement in this case.[25] Stenseth responds that the Board decisions upon which the Municipality relies are irrelevant because they predate statutory amendments that have a direct bearing on this case.

Alaska Statute 23.30.012 provides in relevant part:

> (a)    At any time after death, or after 30 days subsequent to the date of injury, the employer and the

---

[25]    The Municipality contends that the Commission improperly "changed the law, after the fact" and applied a change in the law retroactively in this case. This argument has no merit. As a general rule, legal decisions apply in the case announcing the rule as well as subsequent cases. As we stated in *Vienna v. Scott Wetzel Services, Inc.*, "Absent special circumstances, a new decision of this court will be given effect *in the case immediately before the court*, and will be binding in all subsequent cases . . . ." 740 P.2d 447, 449 (Alaska 1987) (emphasis added) (quoting *Plumley v. Hale*, 594 P.2d 497, 502 (Alaska 1979)) (internal quotation marks omitted). The Municipality fails not only to point to any special circumstances that would exempt it from this rule but also to recognize the statutory changes that undercut the authority of the Board cases it cites.

employee . . . have the right to reach an agreement in regard to a claim for injury or death under this chapter, but a memorandum of the agreement in a form prescribed by the director shall be filed with the division. Otherwise, the agreement is void for any purpose. Except as provided in (b) of this section, an agreement filed with the division discharges the liability of the employer for the compensation, notwithstanding the provisions of AS 23.30.130, 23.30.160, and 23.30.245, and is enforceable as a compensation order.

(b) The agreement shall be reviewed by a panel of the board if the claimant . . . is not represented by an attorney licensed to practice in this state . . . or the claimant is waiving future medical benefits. If approved by the board, the agreement is enforceable the same as an order or award of the board and discharges the liability of the employer for the compensation notwithstanding the provisions of AS 23.30.130, 23.30.160, and 23.30.245. The agreement shall be approved by the board only when the terms conform to the provisions of this chapter . . . .

This section permits an injured worker and his employer to settle a "claim for injury or death" and requires the parties to an agreement to file it with the Board "in a form prescribed by the director." The applicability of this section to the agreement the parties reached depends on whether they reached "an agreement in regard to a claim for injury or death under this chapter."

The Municipality first contends that the Commission erred in deciding that AS 23.30.012 and the Board's regulations about settlements do not apply unless a formal workers' compensation claim is filed. The Municipality also argues that the Board's regulations define "claim" broadly enough to encompass its fraud petition because that regulation defines "claim" as including "any matter over which the board has

jurisdiction."[26] Stenseth responds that the Municipality misinterprets the Commission's decision and that "claim" in AS 23.30.012 refers to the employee's right to compensation. He argues that the Commission correctly interpreted the statute because the Municipality's petition did not involve an "injury" as that word is defined in the statute.

The Municipality's argument is based on a distinction between two uses of the word "claim" in workers' compensation proceedings,[27] but that distinction was immaterial to the Commission's decision. The Commission decided that AS 23.30.012 did not apply because the settlement did not involve a "claim for injury or death" and did not discharge the employer's liability for compensation; instead "the settlement covered efforts on the part of [the Municipality] to recoup benefits it had paid Stenseth." Alaska Statute 23.30.395(24) defines "injury" as an "accidental injury or death arising out of and in the course of employment, and an occupational disease or infection that arises naturally out of the employment or that naturally or unavoidably results from an accidental injury."[28] Because the legislature defined "injury" for purposes of the Alaska Workers' Compensation Act, we apply that definition of "injury" here.[29]

---

[26] 8 AAC 45.900(5) (2011).

[27] *See Jonathan v. Doyon Drilling, Inc.*, 890 P.2d 1121, 1124 (Alaska 1995) (holding that word "claim" in AS 23.30.110(c) meant written claim for workers' compensation benefits); *Suh v. Pingo Corp.*, 736 P.2d 342, 346 (Alaska 1987) (discussing when employer can controvert a worker's right to compensation ("claim") before the worker files a written claim).

[28] AS 23.30.395(24).

[29] *See* AS 01.10.040(a) (requiring words to be construed using legislative definition).

We agree with the Commission that the Municipality's fraud petition is not a claim for "injury" as that term is defined in AS 23.30.395. This definition limits the applicability of AS 23.30.012(a), and the Municipality does not explain how its allegation of fraud is an "injury" as that term is used in the statute. Nor does the Municipality discuss any legislative history that might suggest some meaning other than the statute's plain meaning. We thus agree with the Commission that an employer's fraud petition is not a "claim for injury" under AS 23.30.012.[30] As a result, the settlement did not need to be "in a form prescribed by the director"; the Board could determine the existence of a settlement and the terms of that settlement based on the parties' correspondence.[31]

---

[30] Because the parties were both represented by Alaska attorneys, the Board did not have to approve the settlement or evaluate whether it was in Stenseth's best interests in any event. AS 23.30.012(b). No one alleges that Stenseth was a minor or incompetent, nor did he waive future medical benefits. *Id.* Thus, even if AS 23.30.012 applied, the only applicable *statutory* requirement would have been that "a memorandum of the agreement in a form prescribed by the director shall be filed with the division." AS 23.30.012(a). We have previously held that the Board can waive these procedural requirements, as it did here. *See Cole v. Ketchikan Pulp Co.*, 850 P.2d 642, 647 (Alaska 1993) (holding that Board could waive requirement that settlement be signed by the parties and remanding to determine whether the requirement should be waived). Thus, even if the statute applied, the Board did not exceed its authority in refusing to void the parties' settlement contract.

[31] Relatedly, the Municipality contends the Commission misconstrued the Board's regulation about settlements because that regulation required that all settlement agreements "must be submitted in writing to the board, must be signed by all parties to the action and their attorneys or representatives, if any, and must be accompanied by [a] form . . . ." 8 AAC 45.160(b) (2011). But even assuming the regulation could have some applicability independent of AS 23.30.012, the Board can waive these procedural requirements if "manifest injustice" would result from "strict application of the regulation." 8 AAC 45.195. The Board decided manifest injustice would result in this case if it strictly applied the regulation, and the Municipality has not questioned the

(continued...)

-17-                                                                7064

The Municipality argues that under the Commission's analysis, an employee who waives benefits when settling a fraud petition will not be accorded the protections of AS 23.30.012. While this hypothetical raises interesting questions concerning AS 23.30.012(b), Stenseth did not waive his future medical benefits in this settlement. We observe, however, that when an employee compromises benefits in a settlement, those benefits are from a work-related injury, and the resulting settlement would discharge some of the employer's liability. That is not the case here, where the employer sought reimbursement. We affirm the Commission's decision that AS 23.30.012 is not applicable to the settlement here.

### C. The Commission Correctly Concluded That Equitable Estoppel Prevented The Municipality From Avoiding The Settlement.

In addition to relying on statutory and regulatory defenses to enforcing the settlement, the Municipality also asserted that no settlement existed because Henderson and Heikes exceeded their authority when they made the December 5 offer. The Board applied equitable estoppel to prevent the Municipality from avoiding the settlement, finding that all the elements of estoppel were met. The Commission agreed with the Board's analysis.

The Municipality argues here that the Commission applied equitable estoppel incorrectly because Stenseth could not reasonably have relied on the settlement and because there was no "resulting prejudice" to him. According to the Municipality, Stenseth's continuing efforts to settle the case after he filed his petition in December indicate that the first settlement did not exist and that Stenseth did not rely on it. The Municipality further contends that it would be unjust to make it abide by the terms of the settlement. Stenseth responds that (1) he suffered prejudice in the form of added

---

[31] (...continued)
Board's use of its discretion here.

attorney's fees and costs; (2) his reliance on the settlement was reasonable because the offer he unequivocally accepted was made by the Municipality's attorney, the Municipality's "sole representative" in the case; and (3) no special consideration should be given to the Municipality as a government here because it is acting solely in its capacity as an employer.

We agree with the Commission that equitable estoppel prevents the Municipality from denying the authority of its agents, Heikes and Henderson, to settle this case on the terms in the December 2012 correspondence. Even if the Municipality's agents exceeded their actual authority during the settlement negotiations, the Municipality could be estopped to deny their lack of authority if Stenseth proved the elements of estoppel against the government:[32] "(1) the governmental body asserts a position by conduct or words; (2) the private party acts in reasonable reliance thereon; (3) the private party suffers resulting prejudice; and (4) the estoppel serves the interest of justice so as to limit public injury."[33] The Commission decided all elements were met, and we agree.

The Municipality does not contest that its agents asserted a position in the settlement negotiations, but it argues that no other element was met. It claims that Stenseth could not have relied on the offer because he continued to negotiate after he filed his petition to dismiss the fraud petition. But as we noted earlier, there is nothing inconsistent about attempting to negotiate a settlement related to the petition to dismiss

---

[32]     *See* RESTATEMENT (THIRD) OF AGENCY § 2.03 cmt. g (2006) (noting that sovereign can be estopped to deny its agent's lack of authority).

[33]     *Pfeifer v. State, Dep't of Health & Soc. Servs., Div. of Pub. Assistance*, 260 P.3d 1072, 1082 (Alaska 2011) (quoting *Allen v. State, Dep't of Health & Soc. Servs., Div. of Pub. Assistance*, 203 P.3d 1155, 1164 (Alaska 2009)) (internal quotation marks omitted).

while still maintaining that the original settlement should be enforced. Furthermore, there was no way Stenseth or his attorney could have known that Henderson and Heikes had exceeded their authority. As the Board found, neither Henderson nor Heikes understood the limits of their authority, and they were both "relatively high-level employees." The settlement offer was on Municipal letterhead and signed by the attorney for the Municipality. We hold that Stenseth's reliance on the Municipality's conduct in negotiating the December settlement was reasonable.

We agree with Stenseth that he suffered prejudice from the Municipality's attempt to avoid the settlement. Stenseth incurred additional attorney's fees and costs after the Municipality refused the tender of funds from Stenseth; the additional fees were a direct consequence of the Municipality's actions.

Finally, the estoppel serves the interest of justice. In evaluating the last element, we have approved balancing "the gravity of the injustice to the citizen if the doctrine is not applied" and "the injury to the commonwealth if the doctrine is applied."[34] The Municipality contends that enforcing the settlement bars it "from any chance of ever recovering" additional money from Stenseth. But the Municipality did not ask Stenseth to pay additional money in the negotiations following discovery of the "glitch." It would be unfair to Stenseth not to hold the Municipality to its bargain when he could not possibly have known the limits on the scope of the Municipality's worker's compensation attorney's and its workers' compensation administrator's authority. The settlement only involved one party, so there is little injury to the general public, and the claim is unproved. The strong public policy in favor of settling disputes also weighs in

---

[34]    *Municipality of Anchorage v. Schneider*, 685 P.2d 94, 97 n.6 (Alaska 1984) (quoting 2 C. ANTIEAU, MUNICIPAL CORPORATION LAW § 16A.06, at 16A-15 (1984)) (internal quotation marks omitted).

favor of estoppel here.[35]  We agree with the Commission that the Municipality was properly estopped to deny the authority of its agents and the existence of a settlement in this case.

## V.    CONCLUSION

We AFFIRM the Commission's decision.

---

[35]    *See id.* at 98 (citing policy in favor of settlements in deciding that estoppel should apply).